THURMAN SHORT v. JOYCE IVA CHAPMAN, A MINOR, BY HER GUARDIAN AD LITEM, VELMA W. RHONEY.

(Filed 29 April, 1964.)

**1. Pleadings § 8—**

A counterclaim is substantially the allegation of a cause of action on the part of defendant against plaintiff.

**2. Negligence § 26—**

Nonsuit of a cross-action on the ground of contributory negligence of defendant is proper when and only when defendant's own evidence, considered in the light most favorable to her, establishes contributory negligence on her part so clearly that no other conclusion can be reasonably drawn therefrom.

**3. Automobiles § 11—**

G.S. 20-131, defining a motorist's duties as to the lighting equipment of his head lamps, refers to visibility "under normal atmospheric conditions," and therefore it may be permissible for a motorist to deflect his headlights when driving in fog or other atmospheric conditions in which deflected headlights afford better visibility.

**4. Automobiles § 10—**

When a motorist is traveling within the maximum speed limit, his inability to stop his vehicle within the radius of his headlights will not be held negligence or contributory negligence *per se*. G.S. 20-141(e).

**5. Negligence § 11—**

Only contributory negligence which proximately causes or contributes to the injury under judicial investigation is of legal import.

**6. Negligence §§ 7, 26—**

The question of proximate cause is ordinarily a question of fact for the determination of the jury from the attendant circumstances, and it cannot be a question of law when conflicting inferences of causation arise upon the evidence.

**7. Automobiles § 42d— Evidence held not to warrant nonsuit for contributory negligence, the question of proximate cause being for the jury.**

The evidence favorable to defendant tended to show that plaintiff drove his vehicle, without lights, from a building on the south side of the highway across three lanes of traffic and turned left onto the northern lane for westbound traffic, that defendant, traveling west in fog and light rain within the legal speed limit and with her lights dimmed or deflected, did not see plaintiff's car until it was crossing the centerline dividing the four lanes of traffic, and that defendant then applied her brakes, causing her car to skid and resulting in the injuries in suit. *Held:* Plaintiff's motion to nonsuit defendant's counterclaim on the ground of defendant's contributory negligence was properly denied, since whether defendant could have seen plaintiff's vehicle in time to have avoided the accident had defendant been traveling at a slower speed with her lights on "high beam" is for the jury.

**8. Damages § 3—**

In order to support recovery of permanent damages plaintiff must show with reasonable certainty that the injury proximately resulted from the wrongful act of plaintiff and that such injury is permanent, and while absolute certainty is not required, evidence which leaves the matters in mere speculation or conjecture is insufficient.

**9. Same—**

Testimony of plaintiff at the time of the trial that her head and neck and left leg still hurt and that she had numbness in her left leg, without evidence that these complaints resulted from the injury in suit rather than from other causes, and without expert testimony that such injuries would be permanent, *is held* insufficient to sustain an instruction that the jury might award damages for permanent disability.

APPEAL by plaintiff from *Froneberger, J.,* 3 September 1963 Civil Session of GASTON.

Civil action to recover damages for personal injuries and for $200 damage to an automobile. Defendant, a minor, by her guardian *ad litem* filed an answer in which she denied any negligence on her part, conditionally pleaded contributory negligence of plaintiff as a bar to any recovery on his part, and alleged a counterclaim for personal injuries caused by the actionable negligence of plaintiff in the operation of his automobile. Plaintiff filed a reply to defendant's counterclaim in which he avers that if he was negligent, then defendant by her own negligence contributed to her injuries.

The court submitted five issues to the jury: (1) Was plaintiff injured by defendant's negligence? (2) Did plaintiff by his own negligence contribute to his injuries? (3) What amount is plaintiff entitled to recover from defendant for personal injuries and automobile damage? (4) Was defendant injured by plaintiff's negligence? (5) What amount is defendant entitled to recover from plaintiff for personal injuries? The jury answered the first issue No, did not answer the second and third issues, answered the fourth issue Yes, and awarded defendant damages in the amount of $13,500.

From a judgment that defendant recover $13,500 from plaintiff, together with the costs, plaintiff appeals.

*Carpenter, Webb & Golding by John G. Golding for plaintiff appellant.*

*Hollowell & Stott by Grady B. Stott, and Mullen, Holland & Cooke by Frank P. Cooke for defendant appellee.*

PARKER, J.  Both plaintiff and defendant offered evidence. Plaintiff assigns as error the denial of his motion for judgment of compulsory

nonsuit of defendant's counterclaim made at the close of all the evidence. Plaintiff contends that defendant's own evidence shows as a matter of law that she was guilty of legal contributory negligence, in that she was driving an automobile with its headlights on low beam, and she failed to keep a proper lookout without regard to the sufficiency of her headlights.

Defendant's counterclaim or cross-action is substantially the allegation of a cause of action on the part of defendant against plaintiff arising out of the automobile collision that is the basis of plaintiff's action. *Perkins v. Perkins*, 249 N.C. 152, 105 S.E. 2d 663; Strong's N.C. Index, Vol. 3, Pleadings, § 8.

In respect to defendant's counterclaim or cross-action, the plaintiff may successfully avail himself of his plea of contributory negligence of defendant by a motion for a compulsory judgment of nonsuit if, and only if, the facts necessary to show contributory negligence of defendant are established so clearly by her own evidence that no other conclusion can be reasonably drawn therefrom. *Pruett v. Inman*, 252 N.C. 520, 114 S.E. 2d 360; *Hayes v. Telegraph Co.*, 211 N.C. 192, 189 S.E. 499.

Plaintiff's contention that defendant was guilty of contributory negligence as a matter of law, thereby barring any recovery by her on her counterclaim or cross-action, necessitates an appraisal of her evidence in the light most favorable to her. *Beasley v. Williams*, 260 N.C. 561, 133 S.E. 2d 227; *Bundy v. Powell*, 229 N.C. 707, 51 S.E. 2d 307.

The allegations of fact in the complaint, which are admitted to be true in the answer, show these facts: On 26 May 1960 the Gaston County Moose Lodge was situate on the south side of Wilkinson Boulevard about two miles east of the city of Gastonia. Wilkinson Boulevard is a four-lane highway, 44 feet wide with wide shoulders on each side, and runs in a general east and west direction. It is divided into four lanes for traffic — two lanes for eastern traffic and two lanes for western traffic. These lanes are divided by painted stripes on the highway. About 10 p.m. on 26 May 1960 plaintiff drove his 1960 Dodge automobile from the parking lot of Gaston County Moose Lodge across Wilkinson Boulevard and into the northernmost lane of traffic adjacent to the shoulder of the highway and proceeded to drive his automobile in a western direction toward Gastonia. The minor defendant was driving a Renault automobile in a western direction on Wilkinson Boulevard at the same time. The parties stipulated that the posted maximum speed limit on the Boulevard in the area of the collision is 55 miles an hour.

Defendant's evidence, considered in the light most favorable to her, shows these facts: She was driving the Renault automobile in the north-

ernmost lane of Wilkinson Boulevard next to the shoulder at a speed. of 45 miles an hour. She was alone in the automobile. It was drizzling rain, there was fog, and it was hard to see. The road was slick. The headlights on her automobile were burning on "low beam" and her windshield wiper was working. Her car lights were illuminating the highway for two car lengths ahead of her. As to whether they were illuminating it further she does not know. She was meeting no approaching traffic. She was watching the road ahead of her. When she approached the area adjacent to the Gaston County Moose Lodge, an automobile without any lights shining and traveling not over ten miles an hour "pulled out" on the Boulevard not over two car lengths, or about 25 feet, ahead of her. When she first saw this automobile, it had reached the center line dividing eastbound and westbound traffic and had not straightened up in the northernmost lane. Immediately upon seeing this automobile, she "slammed on" her brakes and "cut her wheel" to the left in an endeavor to get around it. Her automobile started "to spin," turned completely around on the road, slid about 15 or 20 feet with the rear part going in a westerly direction, and the rear end of her automobile hit the bank. All the damage to her automobile was to its rear end; there was no damage to its front. If her automobile touched the automobile in front of her, it was very light. When her automobile hit the bank, she was thrown out of it and knocked unconscious. There was nothing to obscure her vision of the parking lot of the Gaston County Moose Lodge. The area of the parking lot and of the Gaston County Moose Lodge was "lighted some."

Plaintiff's evidence shows these facts: When he and his wife came out of the Moose Lodge, it was drizzling rain. They went to his automobile, which was parked in the parking lot facing the highway. He turned on his lights and rolled the glass of the window down on his side; his wife rolled down the glass of the window on her side. He looked west toward Gastonia, and the road was clear. He then looked east toward Charlotte and saw an automobile "approximately almost two blocks away" to his right that had just come over the crest of a hill and started down it. This automobile was traveling 60 miles an hour or better. He then drove almost straight into the Boulevard, proceeded to its northernmost lane of traffic, and had traveled in this lane at a speed of about 40 miles an hour about 200 yards when he heard tires squealing. His wife looked back and "yelled." He turned and looked back and saw a Renault automobile coming toward him in a spin sideways. He stepped on the gas, and the Renault hit the left rear end of his automobile and went straight into the bank near the highway. When his automobile was hit, it swerved to the right throwing him

against his wife and then back, hitting his hip on the armrest. He stopped a short distance down the road and came back to where his automobile was struck. When he got back, defendant was lying down crying with her head in some man's lap; she was not unconscious. The taillight assembly on the model Dodge plaintiff was driving lights up real bright.

In respect to defendant's counterclaim or cross-action, considering defendant's evidence in the light most favorable to her, there is plenary evidence tending to show that plaintiff was guilty of negligence in operating his automobile, and that such negligence was a proximate cause of defendant's injuries. Plaintiff's contention that defendant's counterclaim or cross-action should be nonsuited on the ground that defendant was guilty of contributory negligence as a matter of law presupposes negligence on his part. *Owens v. Kelly*, 240 N.C. 770, 84 S.E. 2d 163.

Plaintiff makes this contention in respect to defendant's testimony that she was operating her automobile on low beam: "The only occasion when it is permissible to dim one's lights is when one meets another vehicle on a highway. G.S. 20-131(b). Even then it is required that the dimmed headlights render clearly discernible a person 75 feet ahead. When there is no oncoming traffic, one's headlights must render clearly discernible a person 200 feet ahead. G.S. 20-131(a). Where a person operates an automobile on the highway at night with headlights on low beam when nothing exists to require this, he is negligent as a matter of law. *Pike v. Seymour*, 222 N.C. 42, 21 S.E. 2d 884."

It would seem that plaintiff's reference to G.S. 20-131(b) is erroneous, and that he means to cite G.S. 20-131(d). G.S. 20-131(d) reads in part: "Whenever a motor vehicle meets another vehicle on any highway *it shall be permissible* to tilt the beams of the head lamps downward * * * subject to the requirement that the tilted head lamps * * * shall give sufficient illumination *under normal atmospheric conditions* and on a level road to render clearly discernible a person seventy-five feet ahead * * *." (Italics ours.) G.S. 20-131(a) provides: "The head lamps of motor vehicles shall be so constructed, arranged, and adjusted that, except as provided in subsection (c) of this section [a subsection in reference to a motor vehicle being operated upon a highway or portion thereof, which is sufficiently lighted to reveal a person on the highway at a distance of 200 feet ahead of the vehicle], they will at all times mentioned in § 20-129, and *under normal atmospheric conditions* and on a level road, produce a driving light sufficient to render clearly discernible a person two hundred feet ahead, but any

person operating a motor vehicle upon the highways, when meeting another vehicle, shall so control the lights of the vehicle operated by him by shifting, depressing, deflecting, tilting, or dimming the headlight beams * * *." (Italics ours.)

Defendant's evidence shows that it was drizzling rain and there was fog. Certainly, this was not operating a motor vehicle *"under normal atmospheric conditions."* It would seem that driving an automobile at night with its head lamps on bright might prove to be deficient in drizzling rain and fog, and that driving under such conditions with the head lamps on dim might be more effective to see ahead. However that may be—there is no evidence in the record on this point—the General Assembly in defining a motorist's duties as to the lighting equipment of his head lamps refers, in G.S. 20-131, to visibility *"under normal atmospheric conditions."* See *Cheatham v. Chabal,* 301 Ky. 616, 192 S.W. 2d 812, for a like construction of quite similar Kentucky statutes. Certainly, no provision of G.S. 20-131 states that it is permissible to dim one's head lamps *only* when one meets another motor vehicle on a highway, and we know of no statute or decision of this State that states or holds that it is permissible for a motorist to dim his headlights *only* when he meets another vehicle on the highway.

Plaintiff states in his brief: "Where a person operates an automobile on the highway at night with headlights on low beam when nothing exists to require this, he is negligent as a matter of law. *Pike v. Seymour,* 222 N.C. 42, 21 S.E. 2d 884." This case does not support the sentence for which it is cited as authority, and we know of no case in our Reports or any statute of this State that supports such a statement as made by plaintiff in his brief. The *Pike* case holds that under the statute in force in 1941 plaintiff Pierce who outran his headlights was guilty of contributory negligence as a matter of law.

G.S. 20-141 prescribes speeds at which motor vehicles may be lawfully operated on the highways of the State. The 1953 General Assembly amended this statute by a provision which reads: "(e) The foregoing provisions of this section shall not be construed to relieve the plaintiff in any civil action from the burden of proving negligence upon the part of the defendant as the proximate cause of an accident: Provided, that the failure or inability of a motor vehicle operator who is operating such vehicle within the maximum speed limits prescribed by G.S. 20-141(b) to stop such vehicle within the radius of the lights thereof or within the range of his vision shall not be considered negligence *per se* or contributory negligence *per se* in any civil action, but the facts relating thereto may be considered with other facts in such action in determining the negligence or contributory negligence of such operator."

Defendant, according to her testimony, was operating her automobile at a speed of 45 miles in a 55-mile speed zone. Therefore, under the provisions of G.S. 20-141(e) in force on 26 May 1960, she cannot be held guilty of contributory negligence *per se* merely because she was operating her automobile on "low beam" and was unable to stop her automobile within the radius of her lights or the range of her vision. *Burchette v. Distributing Co.*, 243 N.C. 120, 90 S.E. 2d 232; *Beasley v. Williams, supra.*

It is a fundamental principle that the only contributory negligence of legal importance is contributory negligence which proximately causes or contributes to the injury under judicial investigation. *Adams v. Board of Education,* 248 N.C. 506, 103 S.E. 2d 854; *Holderfield v. Trucking Co.,* 232 N.C. 623, 61 S.E. 2d 904; *Elder v. R. R.,* 194 N.C. 617, 140 S.E. 298; *Moore v. Iron Works,* 183 N.C. 438, 111 S.E. 776; 65 C.J.S., Negligence, sec. 129.·

What is the proximate or a proximate cause of an injury is ordinarily a question for a jury. It is to be determined as a fact from the attendant circumstances. Conflicting inferences of causation arising from the evidence carry the case to the jury. *Pruett v. Inman, supra.*

*Cookson v. Humphrey,* 355 Mich. 296, 93 N.W. 2d 903, is a case with a factual situation in many ways similar to the instant case. In the *Cookson* case the Court said: "That plaintiff was guilty of negligence as a matter of law cannot be doubted. Was his negligence a proximate cause of the accident?" The Court held that it was improper to nonsuit plaintiff where the evidence raised an issue as to whether the deficiency of his lights or his excessive speed contributed to causing the collision with defendant's truck, which had negligently entered a four-lane intersection across the path of plaintiff, who was traveling on a favored street, since it could have been found that under the circumstances plaintiff would not have been able to avoid the collision even if he had been driving at a proper speed with adequate lights.

In 8 Am. Jur. 2d, Automobiles and Highway Traffic, § 707, and in Annotation, 67 A.L.R. 2d 141, § 7(a), there are set forth a number of cases which hold that the plaintiff was contributorily negligent, or a finding that he was contributorily negligent was justified or required where it appeared that he was driving his vehicle with inadequate, dim, or deflected headlights and was involved in a collision with a vehicle proceeding in the opposite direction, or the same direction, or at an intersection, and also a number of cases which hold that under such circumstances the plaintiff was not negligent or that, if he was negligent, it was not a contributing cause of the collision. A study of a number of these cases, which have reached divergent results, shows that each case was controlled by its attendant facts and circumstances.

That defendant was guilty of negligence in operating her automobile on "low beam" at a speed of 45 miles an hour in drizzling rain and fog, when her head lamps were illuminating the highway only two car lengths ahead, is manifest. However, if more than one legitimate inference can be drawn from the evidence, the question of proximate cause is to be determined by the jury. *Lincoln v. R. R.*, 207 N.C. 787, 178 S.E. 601. Defendant's evidence would permit a jury to find that she was driving her automobile at night with her headlights on low beam and her windshield wiper working, under prevailing conditions of drizzling rain and fog, at a speed of 45 miles an hour in a 55-mile speed zone in her extreme right lane of traffic on a four-lane highway, when her head lamps were illuminating the highway only two car lengths ahead; that she was watching the road ahead of her; that under such conditions it would have been hazardous for her to have been watching a parking lot off the four-lane highway to her left; that plaintiff drove his automobile with no lights burning into the highway about two car lengths, or about 25 feet, ahead of her and in the path of her lane of traffic; that with plaintiff's automobile coming into the highway from her left, it would not have come within the ambit or spread of the rays of her head lamps if they had been on bright and had complied strictly with the provisions of G.S. 20-131(a), in time to have permitted defendant to see it and to avert a collision; and that even though defendant was negligent in the operation of her automobile, it did not contribute to her injuries as a proximate cause thereof. The trial court properly denied plaintiff's motion for judgment of compulsory nonsuit of defendant's counterclaim or cross-action.

In its charge on the fifth issue, the court instructed the jury, *inter alia,* that if defendant was entitled to recover at all, she was entitled to recover for future suffering of body and mind, and that if by such injury she has been to any extent permanently disabled, then the jury should take such fact into consideration in determining her damage. Plaintiff assigns this part of the charge as error, on the ground that defendant has offered no evidence tending to show that she sustained any permanent injury in the collision, which will result in future suffering.

The amount of pecuniary damages is not presumed. The burden of proving such damages is upon the party claiming them to establish by evidence, (1) such facts as will furnish a basis for their assessment according to some definite and legal rule, and (2) that they proximately resulted from the wrongful act. If there is no evidence as to the extent of the pecuniary damage, there can be no recovery of substantial damages, where the elements of damage are susceptible of pecuniary ad-

measurement. *Lieb v. Mayer,* 244 N.C. 613, 94 S.E. 2d 658; 25 C.J.S., Damages, § 144.

Where there is evidence from which a conclusion of permanent injury proximately resulting from the wrongful act may properly be drawn, the court should charge the jury so as to permit its inclusion in an award of damages. On the other hand, where there is not sufficient evidence of the permanency of an injury proximately resulting from the wrongful act, the court should not give an instruction allowing the jury to assess damages for permanent injuries. To warrant an instruction permitting an award for permanent injuries, the evidence must show the permanency of the injury and that it proximately resulted from the wrongful act with reasonable certainty. While absolute certainty of the permanency of the injury and that it proximately resulted from the wrongful act need not be shown to support an instruction thereon, no such instruction should be given where the evidence respecting permanency and that it proximately resulted from the wrongful act is purely speculative or conjectural. *Hermilla v. Peterson,* 171 Neb. 365, 106 N.W. 2d 507; *Diemel v. Weirich,* 264 Wis. 265, 58 N.W. 2d 651; *MacDonald v. Firth,* 202 Va. 900, 121 S.E. 2d 369; 25 C.J.S., Damages, § 185, d; 15 Am. Jur., Damages, § 377.

Defendant testified as to the injuries she sustained in the collision substantially as follows: As a result of the collision, she was thrown from her automobile and knocked unconscious. When she recovered consciousness in a hospital the next morning, she had some pulled muscles in her neck and could not raise her head off the bed, and her head and left leg were bruised. During her stay in the hospital, she could not lift her head up because of these muscles, her head and leg hurt her, and she could hardly move her leg for a while. She had had no prior injury to her head and leg. Her physician in the hospital was Dr. Morgan. While she was in the hospital, he performed a rectal operation upon her, which had no connection with the collision. On 2 June 1960 she was discharged from the hospital and removed to her home. She was confined there for some time. About a month later she returned to work as a looper at Vision Hosiery in Belmont. She was out of work about a month. Her head and neck still hurt. Her left leg still hurts; it has never gotten better; it has a numbness. She can sit a while and it goes to sleep and gets real numb, and she can hardly walk. She has been to see Dr. Morgan several times about her leg. He sent her to see Dr. Miller, an orthopedic doctor. She saw him twice in August 1962. He prescribed exercises for her leg. Dr. Morgan's bill for attending her for her injuries sustained in the collision was $25.

Dr. Charles Morgan, a witness for plaintiff, testified in substance except when quoted: He saw defendant on the night of 26 May 1960 in

the emergency room at Gaston Memorial Hospital. She was complaining of headaches and of bruises on her leg and body. She was quite dazed. She had amnesia as to the circumstances immediately preceding the accident. Her amnesia cleared up after 12 to 14 hours. He saw her during her stay in the hospital. In the hospital she had some bruised areas on her left hip, left thigh, and tenderness over the area. Subsequently he saw her at his office. The tenderness had disappeared, but she had some numbness to pin-pricks or touching of the left thigh area. Because of pain in her left hip and numbness to pin-pricks, he referred her for an orthopedic consultation. When he examined her at the hospital, no bleeding was apparent, and there was no rigidity or stiffness of the neck. In the hospital he took X-rays of her skull and of her neck, and they were normal. "I had noted in the hospital records no indication of bruising to the left leg or scratches or cuts. The only specific statement with regard to this was in the emergency room, at which time nothing was apparent at that time on admission. In the discharge notes I've noted no complaints about the left leg or any injury to it. * * * The appearance of the area as far as the left leg and thigh are concerned here, or what you might want to term the hip area, seemed at the time to be of relatively trivial or slight nature. There was nothing apparent in the emergency room, and, of course, it takes some time usually for a relatively moderate bruise to develop when you see something like this. It remained in my opinion relatively trivial at least 'til I discharged her from the hospital. I made no notes of that. It was something which in this sense we expected to clear itself without any specific treatment, as we would expect a contused area that might develop to do. * * * Well, the patient's had continuing complaints." Dr. Morgan expressed no opinion that any of defendant's injuries were permanent, and no opinion as to the cause of the pain and numbness in defendant's left leg.

Dr. Miller was not called as a witness. We have summarized all the evidence in the record as to defendant's injuries.

Defendant's testimony is to the effect that at the time of the trial her head and neck and left leg still hurt, and that she still has numbness in her left leg. Is this condition permanent, and was it proximately caused by the wrongful act of plaintiff? Is this numbness in her left leg caused or contributed to by the injuries she sustained in the collision, or is it caused or contributed to by poor circulation or arthritis? Defendant's evidence gives no answer; it is left in the realm of conjecture and speculation. The record has no evidence that would permit a jury to find with reasonable certainty that she sustained any permanent injury as a proximate result of the collision. The instruction per-

mitting the jury to award damages for permanent injury was highly prejudicial to plaintiff, because it is apparent from the evidence in the record of defendant's injuries, and of her continuing complaints of pain, which complaints of pain are subjective in character, and from the size of the verdict that the jury awarded defendant damages on the theory she had sustained permanent injuries proximately resulting from the collision.

In *Diemel v. Weirich, supra,* the Court said: "It is a rare personal injury case indeed in which the injured party at time of trial does not claim to have some residual pain from the accident. Not being a medical expert, such witness is incompetent to express an opinion as to how long such pain is going to continue in the future. The members of juries also being laymen should not be permitted to speculate how long, in their opinion, they think such pain will continue in the future, and fix damages therefor accordingly."

Plaintiff has numerous other assignments of error to the charge in respect to the first, second, and fourth issues, which present serious questions as to whether the trial judge complied with the provisions of G.S. 1-180 requiring him to declare and explain the law arising on the evidence given in the case. We refrain from a discussion of these other assignments of error, for the questions presented thereby may not recur when the case is tried again. In our opinion, and we so hold, plaintiff is entitled to a new trial, and it is so ordered.

New trial.