RUFUS MACON BROWN v. EDWIN HOYLE HALE, GEORGE KELLY JOHNSON AND JOSEPH G. BANKS, T/A BANKS USED CARS.

(Filed 16 December 1964.)

**1. Automobiles § 41e—**

The evidence tended to show that defendant employees were driving the defendant employer's vehicles back to his garage, that one of the vehicles became disabled and the other vehicle was used to push it along the outer lane of a four-lane highway, and that when the pushing vehicle overheated and also became disabled both vehicles were permitted to stand in the outer lane without lights, notwithstanding an eleven foot paved shoulder on the right. *Held:* The evidence is sufficient to be submitted to the jury on the issue of defendants' actionable negligence.

**2. Negligence § 26—**

Nonsuit for contributory negligence is proper when and only when this defense appears so clearly from plaintiff's own evidence that no other inference or conclusion may reasonably be drawn therefrom.

**3. Automobiles § 10—**

The question of liability for a rear collision between a standing and a moving vehicle must be determined upon the facts of each particular case.

**4. Automobiles § 42d—**

Evidence tending to show that plaintiff was traveling within the speed limit of 60 miles per hour on a four-lane highway, following a tractor-trailer, both traveling in the righthand lane for traffic moving in their direction, that the tractor-trailer suddenly swerved to its left, revealing for the first time to plaintiff the presence of defendant's vehicles standing without lights in the middle of the righthand lane, and that defendant immediately applied his brakes, but did not turn left, and crashed into the rear of the standing vehicle, *held* not to show contributory negligence as a matter of law. G.S. 20-141(e).

APPEAL by plaintiff from *Shaw, J.,* March 1964 Civil Session of GUILFORD, Greensboro Division.

Action and cross action growing out of a collision of automobiles.

Subsequent to our decision on former appeal, *Brown v. Hale,* 259 N.C. 480, 130 S.E. 2d 868, which affirmed an order vacating a judgment by default and inquiry, the case came on for trial on issues raised by the pleadings.

Plaintiff alleged the collision was caused by the actionable negligence of defendants and seeks to recover damages for personal injuries. Defendants, in a joint answer, denied negligence and conditionally pleaded contributory negligence; and defendant Banks, trading as Banks Used Cars, asserted a cross action, alleging the negligence of plaintiff was the sole proximate cause of the collision, for damages to the (his) Ford and Chevrolet cars involved in the collision.

At the conclusion of all the evidence, the court entered judgment of involuntary nonsuit as to plaintiff's action. (Note: The judgment contains no reference to the alleged cross action of Banks.) Plaintiff excepted and appealed.

*Frazier & Frazier, Vernon Hart and William P. Pearce, Jr.,* for plaintiff appellant.
*Smith, Moore, Smith, Schell & Hunter and Jack W. Floyd* for defendant appellees.

BOBBITT, J. The only question is whether plaintiff's action should have been nonsuited.

Uncontradicted evidence tends to show: The collision occurred March 13, 1962, about 8:00 p.m., on a portion of Interstate Highway No. 85 approximately three miles west of the Durham County-Orange County line. Interstate 85 has four (each 12 feet wide) concrete traffic lanes. The two lanes for westbound traffic are separated from the two lanes for eastbound traffic by a 50-foot grass median. Adjoining on the north the outer (right) concrete lane for westbound traffic is an 11-foot wide hard surface (asphalt) shoulder. All vehicles referred to in the evidence were proceeding or headed west on the portion of Interstate 85 for use by westbound traffic. The front of the 1962 Buick operated by plaintiff struck the rear of the 1960 Chevrolet operated by defendant Johnson at a time when the 1960 Chevrolet was in position to push the 1959 Ford operated by defendant Hale. The 1960 Chevrolet and the 1959 Ford were owned by defendant Banks; and, when the collision occurred, the operators of these cars were acting in the course of their employment as agents of Banks. Approaching (proceeding west) the point of collision, Interstate 85 is a straight road for approximately one mile. East of the point of collision an overhead bridge crosses Interstate 85. From this bridge to the point of collision, Interstate 85 is upgrade and the estimated distance according to one witness was seven-tenths of a mile and, according to another, one-half mile. The weather was clear. The night was dark. There were no lights in the area except lights on motor vehicles. The maximum speed limit on Interstate 85 at the time and place of the collision was 60 miles per hour.

The following facts, *inter alia*, are disclosed by evidence offered by defendants. Banks, Johnson and Hale had gone from Aulander, N. C., to High Point, N. C., to attend a car auction sale, traveling in Banks' said 1960 Chevrolet. Banks bought two used cars, the 1959 Ford involved in the collision and a 1957 Chevrolet. On their return from

High Point, Banks drove the 1957 Chevrolet, Johnson the 1960 Chevrolet and Hale the 1959 Ford. At or near "a Phillips 66 station on old 70 going into Durham," Banks left Johnson and Hale with the understanding he would meet them later "at a restaurant out on the Wake Forest Road."

Although contradicted by other evidence, there was evidence tending to show the matters set forth in the following numbered paragraphs.

1. When the 1962 Buick operated by plaintiff approached and struck the rear of the 1960 Chevrolet, the 1960 Chevrolet and the 1959 Ford, occupied by their respective operators, were stopped in the outer (right) concrete traffic lane, just over (north of) the white line dividing the outer and the inner traffic lanes, without lights or other warning of their presence.

2. Johnson and Hale, on their return from High Point, had traveled east on Interstate 85. They "pulled off" at a service station located some two miles east of the scene of collision when the 1959 Ford "became disabled." When they left the service station, "they started pushing it (1959 Ford) again" and "got on the westbound lane (of Interstate 85) by mistake." After traveling "a couple of miles," the 1960 Chevrolet pushing the 1959 Ford, the 1960 Chevrolet "began to run hot and stalled and stopped in the westbound traffic lane." It (1960 Chevrolet) "became disabled also . . . both cars were disabled at that time." (The foregoing is based on the testimony of the investigating patrolman as to statements made by Johnson and Hale at the scene of collision.)

In our opinion, the evidence referred to in the two preceding paragraphs, when considered in the light most favorable to plaintiff, was sufficient to require submission of an issue as to defendants' actionable negligence.

Judgment of involuntary nonsuit on the ground of contributory negligence should be granted when, and only when, the evidence, when considered in the light most favorable to plaintiff, establishes plaintiff's contributory negligence so clearly that no other reasonable inference or conclusion may be drawn therefrom. This rule, repeatedly restated, is clear. Its application, at times, is difficult. Complete reconciliation of all the decided cases would tax the ingenuity of the most discriminating analyst.

". . . no factual formula can be laid down which will determine in every instance the person legally responsible for a rear-end collision on a highway at night between a standing vehicle and one that is moving." Stacy, C. J., in *Tyson v. Ford,* 228 N.C. 778, 781, 47 S.E. 2d 251.

As stated by Seawell, J., in *Cole v. Koonce*, 214 N.C. 188, 191, 198 S.E. 637: "Practically every case must 'stand on its own bottom.'"

Plaintiff's testimony is the evidence most favorable to him. His testimony, summarized except when quoted, is set out below.

Plaintiff was returning to his home in Greensboro from a visit to Oxford. He entered the Durham Bypass from "Route 15" and thereafter entered Interstate 85, "the superhighway." Upon reaching Interstate 85, he was behind a tractor-trailer truck, referred to hereafter as T/T, which had entered the bypass from a road leading from the western section of Durham. He followed this T/T, both vehicles traveling at a speed of "about 55 or 60 miles an hour," "for about four miles before the accident." At first, the T/T was "a good 500 feet or better" ahead of plaintiff, but plaintiff "picked up on" the T/T and then "just followed behind" it. The distance plaintiff was behind the T/T as they proceeded along Interstate 85 varied "from 100 to 500 feet."

Just before reaching the overhead bridge, the T/T overtook another tractor-trailer proceeding in the outer (right) lane for westbound traffic; and the T/T pulled to its left, passed in the inner (left) lane and after passing pulled back into the outer (right) lane. Plaintiff, *then* "150 to 200 feet" behind, followed the T/T. When the T/T and plaintiff got back into the outer (right) lane, plaintiff continued behind the T/T at a distance of "100 to 150 feet," both traveling at a speed of "50 to 60 miles per hour," until the T/T swerved to its left as set out below.

Approaching the point of collision, plaintiff "could not see anything past this tractor-trailer (T/T) down the road ahead of (him)." He could not see under it or around it. The only thing he could see was the back of "a boxed-in tractor-trailer," probably 12 feet high, with doors on the back and flaps over the back wheels.

The following excerpts indicate the gist of plaintiff's testimony as to what occurred immediately preceding the collision.

Plaintiff testified: "The tractor-trailer truck that was ahead of me swerved into the left lane, did not give any signal indicating that it was going to swerve or turn, it just all of a sudden, it just turned out across the road. Immediately prior to the collision my lights were on low beam. I didn't have time to raise my beams or do anything. When I saw them cars I hit my brake and hit the car. I would say that I was maybe 100-150 feet from the vehicle I struck when I first observed it."

Again: "As I traveled this 100 to 150 feet from the first time I saw the car, I didn't turn my wheels to the left or to the right but went straight into the rear end of the car. I think that is exactly what I done — I hit him right in the back."

BROWN *v.* HALE.

Again: "I saw the stopped Chevrolet automobile, or whatever it was, for a distance of 100 to 150 feet, that was the first time that I saw it. It came into view when the tractor-trailer ahead of me pulled out to its left, it just ripped out and when the tractor-trailer got out from in front of me was the very first time that I saw it. I don't know whether it would have made any difference if the car had had lights on it or didn't have lights on it, I didn't see any lights, if it had been any, I could have seen it. I don't know if I would have seen it one minute quicker if it had been lights or if it hadn't had light. It wasn't any lights on it — I just couldn't say."

Again: "At the time the truck pulled to the left, I would say I was only 100 to 150 feet behind him going uphill. The tractor-trailer, when it swerved to the left, never did give a signal, it just whipped to the left. The tractor-trailer had lights on the back of it, but I never saw him hit his brakes, nor did the brake lights go on. I didn't see anything, it was so sudden, frankly, I couldn't say whether he hit the brakes or not. He cut to the left. If he put on brake lights, I would have seen them, and I do not recall seeing any. No, he didn't put them on, I'd have seen them."

According to his testimony, plaintiff's speed was 50-60 miles per hour. This did not exceed the maximum speed limit. Plaintiff's negligence, if any, with reference to speed, depended upon whether his speed was greater than was reasonable and prudent under the conditions then existing. G.S. 20-141(a).

According to his testimony, plaintiff was driving 50-60 miles per hour behind a T/T also going 50-60 miles per hour. His negligence, if any, with reference to following too closely, depended upon whether he was following the T/T more closely than was reasonable and prudent, with due regard for the safety of others and due regard to the speed of traffic upon and conditions of the highway. G.S. 20-152.

According to his testimony, plaintiff was 100-150 feet from the 1960 Chevrolet when (by reason of the movement of the T/T) it came within the range of plaintiff's vision. It seems clear plaintiff could not have stopped within this distance. See Am. Jur. 2d Desk Book, Doc. Nos. 173-176, pp. 453-456. Even so, since the effective date of Chapter 1145, Session Laws of 1953, now incorporated in G.S. 20-141(e), plaintiff's inability to stop within the range of his vision was not contributory negligence *per se.* The facts relating thereto were for consideration by the jury in determining the issue of contributory negligence. *Burchette v. Distributing Co.,* 243 N.C. 120, 124, 90 S.E. 2d 232; *Beasley v. Williams,* 260 N.C. 561, 566, 133 S.E. 2d 227, and cases cited.

In relation to the conditions then existing, factual questions for determination include the following: (1) Could plaintiff reasonably infer that the T/T swerved to the left to pass a moving rather than a stopped vehicle? (2) Could plaintiff reasonably assume that his traffic lane was not blocked by a disabled or stalled car, especially on a "superhighway" where an 11-foot hard surface shoulder was available for stopping cars without blocking a traffic lane? (3) Did plaintiff, by failing to turn to the left or to the right, fail to exercise due care to avoid the collision?

Clearly, the evidence, even that offered by plaintiff, would support a jury finding that plaintiff was guilty of contributory negligence. Even so, although a borderline case, we are of opinion, and so decide, that the contributory negligence issue was for jury determination under appropriate instructions.

Having reached the conclusion the evidence required submission of the issues of negligence and contributory negligence, the judgment of involuntary nonsuit is reversed.

Reversed.