EARON E. GRIFFIN v. LEROY THOMAS WATKINS AND DICKERSON, INCORPORATED.

(Filed 22 March, 1967.)

**1. Automobiles §§ 10, 46—**

Where there is evidence that plaintiff was traveling in excess of the maximum legal speed at an hour when headlights were required by G.S. 20-129, and that he was unable to stop before hitting the rear of defendant's vehicle parked in his lane of travel, defendant is entitled to have the court charge the jury in substance in accordance with his prayer for special instructions that under the circumstances the inability of plaintiff to stop his vehicle within the radius of his headlights would constitute contributory negligence *per se*. G.S. 20-141(e).

**2. Trial § 33—**

It is the duty of the court to charge the law applicable to the substantive features of the case arising on the evidence without special request and apply the law to the various factual situations presented by the conflicting evidence.

**3. Automobiles § 46; Negligence § 28—**

An instruction to the effect that if plaintiff had satisfied the jury that defendant failed to exercise due care and that such failure was a proximate cause of the injury, to answer the issue of contributory negligence in the affirmative, must be held for prejudicial error in failing to instruct the jury as to what specific acts or omissions arising under the pleadings and evidence would constitute want of due care.

PARKER, C.J., Concurring in part and dissenting in part.

APPEAL by defendant from *McConnell, J.,* August 22, 1966 Civil Conflict Session of UNION, docketed in the Supreme Court as Case No. 536 and argued at the Fall Term 1966.

Plaintiff sues for personal injuries and property damages resulting from a collision between plaintiff's 1965 Pontiac automobile and a 1960 John Deere tractor owned by the corporate defendant (Dickerson) and operated by its agent, defendant Watkins. Defendants deny plaintiff's allegations of negligence, plead plaintiff's

contributory negligence, and defendant Watkins counterclaims for personal injuries. The collision occurred in a 55 MPH speed zone on August 19, 1965, on U. S. Highway No. 601 about two miles north of Monroe and three-tenths of a mile south of a rural paved road, known as Ridge Road. At this point the pavement, unlined black asphalt newly laid, was 24 feet wide. The west shoulder was 9 feet in width; the east shoulder, 15 feet.

Plaintiff alleged and offered evidence tending to show: At about 7:25 p.m., plaintiff was traveling south on Highway 601 at a speed of 30 MPH. The weather was cloudy, and it was dark at the time. (Plaintiff alleged that the accident occurred at about 7:25 p.m.; he testified that he "figured it was 7:45.") All the cars which he met had their headlights burning; his were on low beam. He met and passed a truck with blinding headlights. As soon as the truck passed, plaintiff saw Dickerson's tractor, stopped 40-50 feet ahead in his lane of travel without lights of any kind on it. There were no flags, flares, or flambeaux to give warning of the tractor's presence. Plaintiff applied his brakes and skidded 37 feet, but he was unable to avoid a collision with the rear end of the tractor. Plaintiff, 71 years old, was seriously and permanently injured, and his automobile was damaged in the sum of $2,350.00. The force of the impact knocked the right rear wheel from the tractor. The tractor came to rest about 81 feet from a pool of oil, which apparently came from its axle, broken in the collision.

Defendants alleged and offered evidence tending to show: Defendant Watkins, operating Dickerson's tractor, which was equipped with a front rotary-sweeper broom, ran out of gasoline in the southbound lane of Highway 601 about 7:00 p.m. He was able to get only the right wheels (18 inches wide and about 5 feet high) off the pavement. The total weight of the tractor and sweeper was 4,300 pounds; its total width, 5 feet 10 inches. The rear of the tractor was equipped with a large, elevated sign saying CAUTION. This sign was approximately 3 feet above the rear wheels of the tractor. On each side of it, at the top, was a yellow light, which blinked when turned on. The tractor was also equipped with headlights and a tail lamp. Leaving all the lights burning on the tractor, Watkins boarded the truck of another employee of Dickerson and went for gasoline. They returned in 15-20 minutes, put the gasoline in the tractor, and Watkins was attempting to start its engine when plaintiff, traveling at a speed of 60-65 MPH, crashed into the rear of the tractor. Defendant Watkins was thrown to the shoulder of the road and his back was injured. At the time of the collision, all the lights on the tractor were burning, and the two yellow lights were blinking. It was, however, not yet dark; sunset was at 7:06

p.m. Neither plaintiff nor operators of other vehicles on the highway had then turned on their headlights.

Issues were submitted to the jury and answered as follows:

"1. Was the plaintiff injured and his automobile damaged by the negligence of the defendants, as alleged in the complaint? ANSWER: Yes.

"2. If so, did the plaintiff by his own negligence contribute to his injuries and damages, as alleged in the answer? ANSWER: No.

"3. What amount, if anything, is the plaintiff entitled to recover of the defendants?

"(a)   For damages to his automobile: ANSWER: $ None.

"(b)   For personal injuries: ANSWER: $40,000.

"4. Was the defendant, LeRoy Thomas Watkins, injured by the negligence of the plaintiff as alleged in the answer? AN-SWER: ——————.

"5. What amount, if anything, is the defendant entitled to recover of the plaintiff? ANSWER: $ ...................... ."

From the judgment entered upon the verdict, defendants appeal,

*Smith & Griffin and Wardlow, Knox, Caudle & Wade for plaintiff.*

*Walter B. Nivens and Kennedy, Covington, Lobdell and Hickman by Charles V. Tompkins, Jr., for defendants.*

SHARP, J. In specifying the acts of omission and commission which they contend constituted negligence and contributory negligence on the part of plaintiff, defendants allege that he failed to operate his automobile at a speed which would permit him to stop within the range of his headlights. With reference to the second issue, they assign as error violative of G.S. 1-180 the judge's failure to charge the jury in words substantially to this effect: If the jury should be satisfied by the greater weight of the evidence that, at the time of the accident, the hour or visibility was such that it became mandatory under G.S. 20-129 for every vehicle upon the highway to have its headlights burning and if they should be satisfied that plaintiff was operating his vehicle at a speed in excess of 55 M.P.H. (the maximum speed permitted by law for that area), then plaintiff's failure or inability to stop his automobile within the radius of his headlights or range of his vision would constitute negligence (or contributory negligence) *per se*. And, if they further found that such failure to stop was a proximate cause of the collision, they should answer the second issue Yes.

Prior to April 29, 1953, the effective date of Section 3 of Chapter 1145 of the 1953 Session Laws, now codified as G.S. 20-141(e), the failure of a nocturnal motorist to drive in such a manner and at such a speed that he could stop his vehicle within the radius of his headlights or range of his vision was negligence, or contributory negligence, *per se.* G.S. 20-141(e) modified this rule with the following proviso:

"(T)he failure or inability of a motor vehicle operator who is operating such vehicle *within the maximum speed limits* prescribed by G.S. 20-141(b) to stop such vehicle within the radius of the lights thereof or within the range of his vision shall not be considered negligence *per se* or contributory negligence *per se* in any civil action, but the facts relating thereto may be considered with other facts in such action in determining the negligence or contributory negligence of such operator." (Emphasis added.)

This provision by its terms does not apply, however, when a motorist is operating his vehicle in excess of the maximum speed limits fixed by G.S. 20-141(b). *Rudd v. Stewart,* 255 N.C. 90, 120 S.E. 2d 601; *Burchette v. Distributing Co.,* 243 N.C. 120, 90 S.E. 2d 232; 35 N.C. L. Rev. 247 (1957). See *Sharpe v. Hanline,* 265 N.C. 502, 144 S.E. 2d 574; *Brown v. Hale,* 263 N.C. 176, 139 S.E. 2d 210; *Short v. Chapman,* 261 N.C. 674, 136 S.E. 2d 40.

Plaintiff's own evidence tended to show that headlights were required by G.S. 20-129 at the time of the collision, and a witness for defendants testified that plaintiff was traveling at 60-65 MPH just prior to the accident — a speed 5-10 MPH in excess of the legal limit. Plaintiff testified that although the lights of the truck he was meeting bothered him, he did not slow down until he saw the tractor. Under their pleadings and evidence, defendants were entitled to the substance of the instruction, the omission of which they have assigned as error. "It is the duty of the court to charge the law applicable to the substantive features of the case arising on the evidence without special request and to apply the law to the various factual situations presented by the conflicting evidence." 4 Strong, N. C. Index, Trial § 33 (1961).

Defendants also assigned as error the following portion of his Honor's instruction to the jury:

"(I)f plaintiff has satisfied you from the evidence and by its greater weight that the defendants were negligent in any one or more of the following respects, *i. e.: that they failed to exercise due care;* that they failed to have the lights on as provided by statute if it was thirty minutes after sunset or the

visibility was less than two hundred feet; or (that) they parked on the highway when it was practical or reasonably practical to park off the highway as provided by section 20-161 of the General Statutes; and . . . (that) the negligence in any one or more of those respects was a proximate cause of the collision and the injury and damage resulting to the plaintiff, then it would be your duty to answer the first issue YES in favor of the plaintiff." (Emphasis added.)

Failure to exercise due care is the failure to perform some specific duty required by law. To say that one has failed to use due care or that one has been negligent, without more, is to state a mere unsupported conclusion. "(N)egligence is not a fact in itself but is the legal result of certain facts." *Shives v. Sample*, 238 N.C. 724, 726, 79 S.E. 2d 193, 195. In his charge, the trial judge must tell the jury what specific acts or omissions, under the pleadings and evidence, constitute negligence, that is, the failure to use due care. Defendants justly complain that this instruction gave the jury *carte blanche* to find them *generally* careless or negligent for any reason which the evidence might suggest to them.

For the errors indicated, there must be a new trial. We do not consider defendants' other assignments of error; the questions presented may not arise in the next trial.

New trial.


PARKER, C.J. Concurring in part and dissenting in part.

I agree with the majority opinion that the defendants are entitled to a new trial for failure of the court in its charge to apply the provisions of G.S. 20-141 (e) to defendants' evidence tending to show that plaintiff was guilty of contributory negligence, as set forth in the second issue. I do not agree with this statement in the majority opinion: "To say that one has failed to use due care . . . is to state a mere unsupported conclusion," and that "defendants justly complain that this instruction gave the jury *carte blanche* to find them *generally* careless or negligent for any reason which the evidence might suggest to them."

Sir A. P. Herbert wittily and happily said in the Uncommon Law, p. 1: "The Common Law of England has been laboriously built about a mythical figure — the figure of 'The Reasonable Man.'" To this may be added: The law of negligence has been laboriously built about the figure of "The Reasonable Man's" failure to use due care. "Due care" is a duty lying at the root of the social compact. In the dawn of the history of the human race, the Lord said unto Cain: "Where is Abel thy brother? And he said, I know not: Am I

my brother's keeper?" Genesis, Ch. 4, v. 9 (King James Version). An old, old question but yet new with all. Whatever doubt may have arisen in the mind of the unhappy man who first asked it, no doubt exists in the law on the right answer, then and now. The law hedges around the lives and persons of men with much more care than it employs when guarding their property, so that, in this particular, it makes, in a way, everyone his brother's keeper. Negligence is the failure to exercise that degree of care for others' safety which a reasonably prudent man, under like circumstances, would exercise. It has also been defined as the failure to exercise proper care in the performance of some legal duty which defendant owes the injured party under the circumstances in which they are placed. Of course, failure to exercise due care for another's safety to be actionable must be the proximate cause of injury, and foreseeability is an element of proximate cause. 3 Strong's N. C. Index, Negligence, § 1.

Winborne, J., in *Hawes v. Refining Co.*, 236 N.C. 643, 74 S.E. 2d 17, said: "And it is a general rule of law, even in the absence of statutory requirement, that the operator of a motor vehicle must exercise ordinary care, that is, that degree of care which an ordinarily prudent person would exercise under similar circumstances."

Bobbitt, J., said in *Henderson v. Henderson*, 239 N.C. 487, 80 S.E. 2d 383: "Apart from safety statutes prescribing specific rules governing the operation of motor vehicles, a person operating a motor vehicle must exercise proper care in the way and manner of its operation, proper care being that degree of care that an ordinarily prudent person would exercise under the same or similar circumstances and when charged with like duty. Thus, he must exercise due care as to keeping a proper lookout, as to keeping his car under proper control, and generally so as to avoid collision with persons or other vehicles on the highway."

"It may be assumed that the jury will understand that a want of 'due care,' 'ordinary care,' or 'reasonable care' given in special charges is equal to negligence, and if the plaintiff ᵛdeems such charges misleading, he should request an explanatory charge." 38 Am. Jur., Negligence, § 364, p. 1078. In my opinion, the failure to use due care is not a mere unsupported conclusion, but is a fact and is generally used and understood as such in the language of the ordinary man, although speaking most technically it may be considered by some as a mere conclusion.