Anderson v. Butler

EUGENE S. ANDERSON II, BY HIS GUARDIAN AD LITEM, NANCY S. AN-
DERSON, AND EUGENE S. ANDERSON v. CORNELIUS BUTLER,
JR., AND WIFE, PHYLLIS H. BUTLER

No. 7318SC469

(Filed 24 October 1973)

Negligence § 29— injuries from operation of forklift — insufficient evi-
dence of negligence

In an action to recover for injuries sustained by minor plaintiff
when he was run over by a forklift allegedly operated by defendants'
minor son, the trial court erred in failing to allow defendants' motion
for directed verdict where the evidence favorable to plaintiffs tended to
show only that minor plaintiff visited with defendants, that defendants
owned a forklift which they allowed their minor son to operate, and
that at the time of the accident causing plaintiff's injuries, defendants'
son was operating the forklift while male defendant was in the vicinity.

Judge BALEY dissenting.

APPEAL by defendants from Crissman, Judge, 4 December
1972 Session of Superior Court held in GUILFORD County.

This is an action to recover for injuries to the minor plain-
tiff, Eugene S. Anderson II (Sonny) by his mother and guard-
ian ad litem, Nancy S. Anderson and an action by Eugene S.
Anderson, father of the minor plaintiff, to recover for medical
expenses incurred on behalf of the minor.

Except for allegation as to jurisdiction and damages the
complaint is as follows:

"III.   That on or about 11 April 1970, the plaintiff
minor was invited to and went upon the residential property
of the defendants for a visit to play with the defendants'
son; that the property of the defendants is located in a rural
area of Randolph County at Route 31, Randleman, North
Carolina.

"IV.   That while the plaintiff minor was visiting with
the defendants, the defendants were both present at the
residence and were aware of all of the occurrences alleged
herein; that the male defendant owned a fork lift machine
and was using said machine to clean up or move certain
materials from place to place in the yard of his home; that
the defendants allowed their son, then about ten (10) years
old, to operate the fork lift machine about the yard on un-
even terrain and at dangerous and excessive speed, and

the defendants allowed the plaintiff minor to ride upon the front of the fork lift without either warning him of the danger or controlling the dangerous operation of it by their son.

"V. That the defendants allowed their son to drive the fork lift machine so that it tipped, and threw the plaintiff minor off in front of it, and allowed him to drive the fork lift onto and over the plaintiff's body as he lay upon the ground, doing severe damage and injury to the plaintiff minor's body. That the defendants' acts as alleged, and their omission to act as alleged, were negligence, and this negligence was the proximate cause of severe bodily injury to the plaintiff minor."

The evidence tended to show the following.

On 11 April 1970, Sonny's father brought him to defendants' home and left him to play with defendants' youngest son, Russell. Sonny and Russell were then nine years old. Defendants had just built their house and the yard was being graded. On the same premises and several hundred feet from the house, defendants had a shop building used for the manufacture of trailers. A forklift was used in that business. Sonny's father had been to defendants' home before and was familiar with the machinery there and had seen the forklift in operation on those premises. When he arrived, a bulldozer was being used in front of the home to grade the yard. He did not talk with the male defendant but took Sonny inside and left him with Mrs. Butler. He admonished Sonny to behave himself and to stay away from the equipment. After about five minutes, he left and did not see Sonny again until after the accident.

Mrs. Butler was called as a witness for plaintiff. In substance she testified that after Sonny's father left him there about ten or eleven o'clock a.m., Sonny and Russell played inside for awhile and then went outside. Later the children came inside, and Sonny asked if he could ride the forklift. She replied, "Absolutely not." The children then played outside until they came in for lunch. Sometime after lunch, the children went out to play and remained outside until after the accident. During all of this time she was engaged in her usual household chores. She knew that both the forklift and the bulldozer were being used in the yard but did not go outside except possibly

briefly to shake rugs or work of that nature.  At no time did she see Sonny about the forklift or bulldozer.  On the day of the accident another son, Don, age eleven, was helping his father in the yard.  Her husband was operating the forklift part of the time on the day of the accident.  Although Mrs. Butler did not testify that she saw Don operate the forklift on the day of the accident, she had frequently seen him operate the machine over the preceding two years.  During that two-year period Don used the machine about once each week to move stacks of lumber and generally help his father.

Sonny testified that it was at school that he first spoke to Russell, the youngest of the Butler boys, about coming to visit with Russell.  On the morning of 11 April 1970, his father took him to Russell's home (11 April 1970 was a Saturday).  He could not remember his father saying anything about the building or machinery.  He did not remember talking to Mrs. Butler on the morning of the accident.  He did not ask her about riding the forklift, and at no time did she forbid him from doing so.  He and Russell rode the forklift once in the morning when Don was operating it in back of the house.  At that time Mr. Butler was in the front yard with the bulldozer.  That ride lasted about five minutes.  He and Russell went down to a nearby river and played for about 30-45 minutes.  They then went back inside and played for awhile.  They learned that the bulldozer had crushed the septic tank and went outside to look at that.  Later he and Russell got on the forklift again.  The forklift was loaded with an old roll of carpet.  Don asked them to get on to keep the carpet from falling off the machine.  As they were headed toward the shop building the machine hit a bump, Sonny fell off and was struck by one of the forks.  Russell jumped off the machine.  Don stopped the machine and called for help.  During this ride Mr. Butler was in the back scraping dirt away from the septic tank.  Although Sonny did not say that Mr. Butler did see him on the machine, he did say that he saw Mr. Butler and that Mr. Butler "could see me."  Don had operated the machine for an hour or more before the accident, and Mr. Butler was in and around the yard for all of that time.  Sonny did not know how fast the machine was being operated when it hit the bump, but he would say "maybe five to ten miles an hour."

The male defendant, called as a witness by plaintiff, testified substantially as follows.  He was not aware that Sonny

planned to visit. He did see Sonny's father leave the premises in a truck. He went in the house to get a sandwich for lunch and saw the child. This was his first knowledge that the child was there. He did not remember saying anything to the child. He operates a family business in a shop behind the home in the course of which he builds trailers. He was not engaged in the business that day but was leveling the yard around his new home. They were also moving trash and scraps of building materials. His son Don was helping with the yard cleaning and for some of the work had to use the forklift. He had told Don to remove an old roll of rotten carpet that was located behind the house. Don had used the machine regularly for two years and could operate it as well as an adult. He saw Don operate the machine on the day of the accident and never saw Russell or Sonny on the machine. He learned of the accident when his wife told him. He then took Sonny first to plaintiffs' home and then to the hospital.

There was no evidence that, prior to the day of the accident, Don had ever allowed another child to ride with him on the forklift.

Plaintiffs' evidence tended to show that Sonny's injuries were painful and serious and required extensive medical care.

Defendants' motions for directed verdict, made at the close of plaintiffs' evidence and at the close of all the evidence, were denied.

The following issue was submitted to the jury on the question of defendants' negligence:

"1. Was the plaintiff-minor injured as a result of the negligence of the defendants, as alleged in the complaint."

That issue was answered in the affirmative and the jury, by its answer to other issues, awarded damages in the amount of $19,849.45.

The court denied defendants' motion that the verdict be set aside and that judgment be entered in accordance with their motions for directed verdict. Defendants appealed from the judgment entered.

*Dees, Johnson, Tart, Giles & Tedder by J. Sam Johnson, Jr., for plaintiff appellees.*

*Harry Rockwell, John R. Hughes and Worth Coltrane for defendant appellants.*

Anderson v. Butler

VAUGHN, Judge.

The record does not disclose that defendants stated the specific grounds for their motions for a directed verdict. It is clear, however, that the motions were made on the grounds that the evidence, in the light most favorable to the plaintiff, as a matter of law was insufficient to justify a verdict for plaintiffs. The motion thus raised substantially the same question as that formerly raised by a motion for involuntary nonsuit, *Kelly v. Harvester Co.*, 278 N.C. 153, 179 S.E. 2d 396, and we will, in our discretion, review the denial thereof.

In consideration of defendants' motions for a directed verdict we do not consider the testimony given by defendants, called as witnesses by plaintiffs, which tends to exculpate defendants, even when that evidence favorable to defendants is not otherwise contradicted by plaintiffs. The credibility and weight to be given such evidence are matters for jury consideration. *Bowen v. Rental Co.*, 283 N.C. 395, 196 S.E. 2d 789.

We have set out the evidence in considerable detail. A majority of the panel is of the opinion that the evidence, when considered in the light of the familiar standards, is insufficient for submission to the jury. The dissent, of course, entitles plaintiffs to further review as a matter of right.

Our decision that it was error to deny defendants' motions for a directed verdict makes it unnecessary to consider defendants other assignments of error. Suffice it to say that if the case had been one for the jury, the majority would hold that the defendants are entitled to a new trial for, among other reasons, the failure of the judge to tell the jury what acts or omissions, under the evidence, they might find to constitute negligence. A jury cannot be left free to find defendants generally negligent "for any reason which the evidence might suggest to them." *Griffin v. Watkins*, 269 N.C. 650, 153 S.E. 2d 356.

It was error not to allow defendants' motions for a directed verdict. The judgment is reversed, and the cause is remanded for proceedings not inconsistent with this opinion.

Reversed and remanded.

Judge CAMPBELL concurs.

Judge BALEY dissents.

Judge Baley dissenting:

I am of the opinion that the evidence in its most favorable light for plaintiff presents a question for the jury.