SCOTT DEWAYNE LITTLETON, Plaintiff v. JONATHAN WILLIS, ADMINISTRATOR CTA OF THE ESTATE OF ELLA DEE WILLIS, DECEASED, Defendant

No. COA09-732

(Filed 6 July 2010)

**Negligence— instructions—permanent injury**

The trial court erred by instructing the jury on permanent injury in a negligence action arising from an automobile accident where the medical testimony established only that plaintiff's injury had not healed after one year. Plaintiff did not present any medical expert testimony that plaintiff, with reasonable certainty, may be expected to experience future pain and suffering.

Appeal by Defendant from Judgment entered 19 August 2008 and Order entered 22 December 2008 by Judge Phyllis M. Gorham in Superior Court, Carteret County. Heard in the Court of Appeals 5 November 2009.

*Bailey & Way, by John E. Way, Jr., for Defendant-Appellant.*

*Wheatly, Wheatly, Weeks & Lupton, P.A., by Stevenson L. Weeks and Christopher L. Beacham, for Plaintiff-Appellee.*

STEPHENS, Judge.

### I. Factual Background and Procedural History

On 24 February 2006, Scott Dewayne Littleton ("Plaintiff") filed a complaint against Jonathan Willis, in his capacity as the administrator of the estate of Ella Dee Willis ("Defendant"), alleging personal injuries as a result of an automobile accident that occurred on 21 December 2004. This matter came on for trial during the 28 July 2008 Civil Session of Superior Court, Carteret County. The evidence presented at trial tended to show the following:

On 21 December 2004, Plaintiff was involved in a car accident, in which a vehicle traveling in the opposite direction, driven by Ella Dee Willis, collided head on with Plaintiff's vehicle.[1] Plaintiff was driving his vehicle, and his wife, three children, and a friend were passengers in the vehicle. Upon impact, the friend who was riding in the front passenger seat was thrown through the windshield; Plaintiff's wife and son were thrown from the passenger side of the back seat into the front passenger seat; and Plaintiff's daughters were thrown from the driver's side of the back seat into the back of the driver's seat, in which Plaintiff was sitting. Plaintiff was trapped in the driver's seat because the impact had caused the vehicle's motor to enter the passenger compartment and crush Plaintiff's left foot under the brake pedal. The passengers riding in Plaintiff's vehicle were able to exit the vehicle on their own, but Plaintiff had to be pulled from the vehicle by emergency medical personnel.

Immediately following the accident, Plaintiff was transported by emergency medical personnel to Carteret General Hospital. At Carteret General Hospital, Plaintiff complained of "left collar bone pain, chest wall discomfort, left lower extremity pain and minimal abdominal pain." Laboratory tests revealed an elevated creatinine level which is a muscle enzyme that is released into the blood when a muscle is damaged. The emergency room physician at Carteret General Hospital requested a consultation from Dr. Brady Way ("Dr. Way"), a general surgeon. Dr. Way's impression was that Plaintiff suffered from blunt chest and abdominal trauma with probable mediastinum vascular injury.

Later that day, Plaintiff was flown to Pitt Memorial Hospital for review. At Pitt Memorial Hospital, Plaintiff was examined and it was

---

1. Ella Dee Willis is now deceased.

determined that there was no major mediastinum injury. On 22 December 2004, Plaintiff was released from Pitt Memorial Hospital.

Plaintiff first sought medical treatment from Dr. James Crosswell ("Dr. Crosswell") on 10 January 2005. At the first visit, Dr. Crosswell observed that Plaintiff's foot was swollen and thought there could be a "hidden" fracture. Due to Plaintiff's continued complaints of left foot pain, continued swelling, and inability to ambulate, Dr. Crosswell ordered an MRI which revealed a fracture of the medial cuneiform and probable fracture of the lateral cuneiform bones in the left ankle/upper foot area. Throughout this time, Plaintiff continued to complain of shoulder, ankle, and foot pain. Dr. Crosswell also testified that Plaintiff was unable to work as a roofer during the time he was under his care.

Dr. Crosswell referred Plaintiff to Dr. Jeffrey Moore ("Dr. Moore"), an expert in orthopedic surgery. During visits to Dr. Moore from 20 January 2005 to 30 June 2005, Plaintiff complained of pain in his left foot and ankle. Dr. Moore opined that Plaintiff could not engage in his occupation as a roofer during the period Plaintiff was under his care.

Plaintiff testified that in the nearly four years since the accident, he had experienced significant swelling and pain in his left foot. Plaintiff testified that he has taken pain medication ever since the accident. Plaintiff's current medications included a fentanyl patch, at a cost of $280.84 for ten patches, and either percocet or oxycodone, costing $21.50 for sixty tablets.

Plaintiff's wife, Daria Littleton ("Daria"), testified that her family had no source of income after the accident, and that they stayed with friends and family. Daria testified that she puts pillows under Plaintiff's foot at night to prevent swelling and relieve the pain so Plaintiff can sleep. Because Plaintiff has been unable to work since the accident, Daria found work cleaning houses in order to pay for the family's bills and Plaintiff's prescriptions. Daria testified that money is so tight for her family, she has to choose between paying the electric bill and paying the pharmacy bills for Plaintiff's pain medications, which cost between $200.00 and $400.00 per month.

At the close of Plaintiff's evidence, Defendant made a motion for a directed verdict which was denied. At the close of all evidence, Defendant renewed his motion for a directed verdict and Plaintiff made a motion for a directed verdict on the issue of negligence. The trial court denied Defendant's motion and granted Plaintiff's motion.

**LITTLETON v. WILLIS**

[205 N.C. App. 224 (2010)]

During the charge conference, Defendant objected to an instruction on permanent injury. The trial court overruled Defendant's objection and instructed the jury on permanent injury. The jury returned a verdict awarding damages in the amount of $1,428,238.60. Judgment was entered upon the jury's verdict on 19 August 2008.

On 8 August 2008, Defendant filed motions for judgment notwithstanding the verdict and new trial. In an order entered 22 December 2008, the trial court denied Defendant's motions. From the trial court's judgment and order, Defendant appeals.

## II. *Instruction on Permanent Injury*

In his first argument, Defendant contends that there was insufficient evidence to support a charge of permanent injury, and that the trial court erred in giving an instruction on such. Plaintiff, however, contends that Defendant did not object to the jury charge on permanent injury, and thus, has failed to preserve this issue for our review. Plaintiff's argument is without merit.

Pursuant to N.C. R. App. P. 10(a)(2),

[a] party may not make any portion of the jury charge or omission therefrom the basis of an issue presented on appeal unless the party objects thereto before the jury retires to consider its verdict, stating distinctly that to which objection is made and the grounds of the objection; provided that opportunity was given to the party to make the objection out of the hearing of the jury, and, on request of any party, out of the presence of the jury.

Contrary to Plaintiff's contention, Defendant did object to the jury instruction on permanent injury at trial. During the charge conference, defense counsel entered an objection to a charge on permanent injury, arguing that there was no evidence supporting that instruction. The trial court overruled that objection and allowed the instruction. Later on, the trial court asked for any additions, corrections, or objections to the instructions and the following exchange occurred:

[DEFENSE COUNSEL]: Your Honor, as you know, I object to any reference to loss—of loss of part of the body and permanent injury. As you know, I objected to the finding of negligence.

THE COURT: Objection is noted.

I am going to, if there is no objection, allow the jury to have this copy of the instruction.

. . . .

THE COURT: Any objection, [defense counsel]?

[DEFENSE COUNSEL]: No, your Honor.

Defense counsel's response of, "No, your Honor[,]" when asked if there was any objection at the end of the charge conference did not constitute a waiver of this issue on appeal. Defense counsel entered an objection to an instruction on permanent injury at the beginning of the charge conference and again immediately prior to the trial court's final inquiry. Moreover, it is obvious that defense counsel's response related solely to the trial court's intention to give a copy of its instructions to the jury. Defendant has preserved this issue for our review, and thus, we address the merits of Defendant's argument.

Our Court reviews a trial court's decisions regarding jury instructions *de novo. State v. Osorio,* —— N.C. App. ——, ——, 675 S.E.2d 144, 149 (2009). "The prime purpose of a court's charge to the jury is the clarification of issues, the elimination of extraneous matters, and a declaration and an application of the law arising on the evidence." *State v. Cameron,* 284 N.C. 165, 171, 200 S.E.2d 186, 191 (1973). "[A] trial judge should not give instructions to the jury which are not supported by the evidence produced at the trial." *Id.* Moreover, "[w]here jury instructions are given without supporting evidence, a new trial is required." *State v. Porter,* 340 N.C. 320, 331, 457 S.E.2d 716, 721 (1995).

> "To warrant an instruction permitting an award for permanent injuries, the evidence must show the permanency of the injury and that it proximately resulted from the wrongful act with reasonable certainty. While absolute certainty of the permanency of the injury and that it proximately resulted from the wrongful act need not be shown to support an instruction thereon, no such instruction should be given where the evidence respecting permanency and that it proximately resulted from the wrongful act is purely speculative or conjectural." *Short v. Chapman,* 261 N.C. 674, 682, 136 S.E.2d 40, 46 [(1964)]. The opinion in *Short v. Chapman, [s]upra,* quotes with approval from *Diemel v. Weirich,* 264 Wis. 265, 58 N.W.2d 651 [(1953)], as follows:

> " 'It is a rare personal injury case indeed in which the injured party at time of trial does not claim to have some residual pain

from the accident. Not being a medical expert, such witness is incompetent to express an opinion as to how long such pain is going to continue in the future. The members of juries also being laymen should not be permitted to speculate how long, in their opinion, they think such pain will continue in the future, and fix damages therefor accordingly.' "

*Callicutt v. Hawkins*, 11 N.C. App. 546, 547-48, 181 S.E.2d 725, 726 (1971).

There can be no recovery for a permanent injury unless there is some evidence tending to establish one with reasonable certainty. Upon proof of an *objective* injury from which it is apparent that the injured person must of necessity continue to undergo pain and suffering in the future, the jury may award damages for it without the necessity of expert testimony. Where, however, the injury is *subjective* and of such a nature that laymen cannot, with reasonable certainty, know whether there will be future pain and suffering, it is necessary, in order to warrant an instruction which will authorize the jury to award damages for permanent injury, that there be offered evidence by expert witnesses, learned in human anatomy, who can testify, either from a personal examination or knowledge of the history of the case, or from a hypothetical question based on the facts, that the plaintiff, with reasonable certainty, may be expected to experience future pain and suffering, as a result of the injury proven.

*Gillikin v. Burbage*, 263 N.C. 317, 326, 139 S.E.2d 753, 760-61 (1965) (internal citations and quotation marks omitted); *see also Mitchem v. Sims*, 55 N.C. App. 459, 462, 285 S.E.2d 839, 841 (1982) (Where injury complained of is subjective and of such nature that a layman cannot with reasonable certainty know whether injury is permanent, it is necessary to have medical expert testimony.); *Callicutt*, 11 N.C. App. at 548, 181 S.E.2d at 726 (Where injury complained of is subjective and of such nature that layman cannot, with reasonable certainty, know whether the injury is permanent or whether there will be future pain and suffering, jury may be authorized to award damages for permanent injury or future pain and suffering only if there is offered evidence by expert witnesses who can testify that there is reasonable certainty of permanency or of future pain and suffering.).

In *Callicutt*, our Court held that the trial court did not err "in instructing the jury that there was no evidence that plaintiff sustained a permanent injury or would suffer future pain or incur future med-

ical expenses as a result of [a] collision." *Callicutt*, 11 N.C. App. at 546, 181 S.E.2d at 726. In that case, the only evidence of the permanency of the plaintiff's injury was the plaintiff's testimony that his back continued to hurt every day, four years after the accident which caused his injury. *Id.* at 547, 181 S.E.2d at 726. The doctor who treated the plaintiff ten days after the collision testified that plaintiff's condition appeared to be normal except for a small herniated disc in the lower back, and the doctor did not testify that this injury would be permanent. *Id.* The only other medical expert testimony came from a doctor who examined the plaintiff shortly before trial, and that doctor testified that the plaintiff did not have a herniated disc at that time. *Id.* Thus, the only evidence of permanent injury was the plaintiff's own testimony. *Id.*

In *Gillikin*, the plaintiff presented medical expert testimony that the plaintiff's ruptured disc was the type of condition that usually improves but that could reoccur. *Gillikin*, 263 N.C. at 326, 139 S.E.2d at 761. Our Supreme Court held that this testimony fell short of establishing a permanent injury and noted that the plaintiff's counsel made no further attempt to show one. *Id.* Thus, it was error to charge the jury on permanent injury where so much would have been left to the jury's speculation. Further, the Court found that it was error to admit the mortuary table into evidence in the absence of sufficient evidence of permanent injury. *Id.* at 327, 139 S.E.2d at 761.

> In actions for personal injuries resulting in permanent disability, the mortuary table (G.S. § 8-46) is competent evidence bearing upon the life expectancy and the future earning capacity of the injured person. It is not admissible unless there is evidence of permanent injury. Without such evidence, the admission of the mortuary table to show the probable expectancy of life would be misleading and prejudicial. The expectancy of life is only material when the injury is shown to be one which will continue through life. When permanence is not shown to be probable, the admission of evidence as to the probable duration of the plaintiff's life is improper, and can only mislead the jury as to the real import of the testimony upon the question of damages.

*Id.* (internal citations and quotation marks omitted).

We conclude that the evidence in this case is no more sufficient on permanent injury than that which was presented in *Callicutt* and *Gillikin*, and thus, the trial court erred in instructing the jury on permanent injury. The medical expert testimony presented at trial

tended to show the following with regard to the alleged permanent nature of Plaintiff's injury:

During visits to Dr. Jeffrey Moore from 20 January 2005 to 15 July 2005, Plaintiff complained of a great deal of pain in his left foot and ankle. On or about 10 March 2005, Dr. Moore reviewed an MRI that Dr. James Crosswell had ordered. That MRI revealed a fracture of the first cuneiform bone in Plaintiff's foot. The cuneiform is in the middle part of the foot and is one of several bones that acts as an intermediary between the ankle and the fore part of the foot where the metatarsals and toes are. Dr. Moore also reviewed the report from Plaintiff's 6 July 2005 MRI which revealed the presence of edema. Dr. Moore explained that

> edema is one of those signs of inflammation, and those are the types of findings that one sees with any long-term problem with a bone or joint. Any post-traumatic episode where you repeat an M.R.I. at a really long time frame after the initial injury, and you see such things as edema in the surrounding joints and bones.

Dr. Moore opined that Plaintiff could not engage in his occupation as a roofer during the period Plaintiff was under his care. There is no evidence, however, that Dr. Moore saw Plaintiff after 15 July 2005, some seven months after the automobile accident, nor is there any evidence that an MRI of Plaintiff's foot was performed after 6 July 2005.

Dr. Crosswell treated Plaintiff from 18 January 2005 until 23 December 2005, and then reexamined him almost two years later in November 2007. Throughout this time, Plaintiff continued to complain of shoulder, ankle, and foot pain. Dr. Crosswell testified that when he saw Plaintiff on 23 December 2005, one year after the accident, Plaintiff's foot fracture still had not healed. Dr. Crosswell next saw Plaintiff in November 2007, at which time Plaintiff continued to complain of shoulder and ankle pain. Dr. Crosswell was uncertain if the fracture in Plaintiff's foot had healed at that time. Dr. Crosswell opined that Plaintiff was unable to work as a roofer during the time he was under his care. When asked if he considered Plaintiff's injury to be permanent, Dr. Crosswell testified that "[n]ot having seen him for a couple of years, three years, I really don't have—I don't feel like I could give an accurate assessment to what has happened in the last three years."

As in *Callicutt* and *Gillikin*, Plaintiff did not present any medical expert testimony that Plaintiff, "with reasonable certainty, may be

expected to experience future pain and suffering, as a result of the injury proven." *Gillikin*, 263 N.C. at 326, 139 S.E.2d at 761. The medical testimony in this case establishes only that Plaintiff's injury had not healed after one year. Thereafter, Dr. Crosswell could not opine as to whether Plaintiff's fracture had healed in the following years. Thus, the medical testimony in this case was insufficient to warrant an instruction on permanent injury as this would have required the jury "to speculate how long, in their opinion, they think [Plaintiff's] pain will continue in the future, and fix damages therefor accordingly." *Callicutt*, 11 N.C. App. at 547-48, 181 S.E.2d at 726. We thus conclude that the trial court erred in instructing the jury on permanent injury. Accordingly, we award a new trial. In light of this holding, we need not address Defendant's remaining arguments on appeal.

NEW TRIAL.

Judges STROUD and BEASLEY concur.