McGEE, Chief Judge.
*168 Cynthia Jean Furr ("Furr") was driving her two-year-old daughter McAllister Grier Furr Price ("McAllister") in her automobile ("the Furr car") in the early evening of 4 April 2009. Furr was driving the approximately one-half mile from her home to her church, where she was the musical director. As Furr attempted to make a left-hand turn from her street, Riverpointe Drive, onto Highway 49 in the direction of downtown Charlotte, the Furr car was broadsided by a Mitsubishi ("the Stasko car") driven by twenty-year-old Tyler Stephen Stasko ("Stasko"). Eleven-year-old Rex Evan Thomas ("Rex") and thirteen-year-old Hunter Daniel Holt ("Hunter") were passengers in the Stasko car at the time of the collision. Furr, McAllister, and Hunter died as a result of injuries sustained in the collision. This collision occurred in a four-way intersection ("the intersection") where Riverpointe Drive and Palisades Parkway intersected with Highway 49.
According to the findings of fact of the Full Commission of the North Carolina Industrial Commission ("Industrial Commission"), before the collision, Stasko was driving Rex and Hunter home from a day trip to Carowinds amusement park. The Stasko car was heading in a westerly direction on Highway 49, away from Charlotte and towards Lake Wylie and South Carolina. While Stasko was stopped for the traffic signal at the intersection of Shopton Road, Rex and Hunter noticed two female friends in an adjacent vehicle driven by Carlene Atkinson ("Atkinson"). The kids "began gesturing and joking with each other." "When the light at Shopton Road turned green, Mr. Stasko and Ms. Atkinson sped off at a high rate of speed in the direction of the Palisades/Riverpointe intersection." Stasko and Atkinson were apparently engaging in a race. The traffic signal at Shopton Road was the last traffic signal or sign Stasko would encounter before the collision. There was no traffic signal or sign *169 regulating traffic on Highway 49 at the intersection. There was a stop sign on Riverpointe *700 Drive, requiring drivers to stop before entering or crossing Highway 49.
After coming to the stop sign on Riverpointe Drive, Cynthia Furr crossed Hwy 49 in order to make a left turn and proceed east on Hwy 49. She slowed prior to concluding the left turn in order to allow eastbound traffic on Hwy 49 to clear. At the Riverpointe Drive intersection, Mr. Stasko's vehicle, which was traveling in the left through lane, collided with the left side of Ms. Furr's vehicle at an estimated speed of 86 miles per hour.
Atkinson, who was "some distance behind" the Stasko car when it impacted the Furr car, stopped briefly at the scene of the accident, and then "left the accident scene without offering assistance or waiting for law enforcement personnel to arrive."
Beginning in 2000, the area around the intersection underwent significant changes. Prior to 2000, Highway 49, in the vicinity of Riverpointe Drive, was a two-lane highway with a speed limit of 45 miles per hour. Riverpointe Drive terminated at its intersection with Highway 49, and there was no roadway continuing on the opposite side of Highway 49 from Riverpointe Drive. By late 2005, Highway 49 had been widened to a four-lane highway, and the speed limit had been increased to 55 miles per hour. Defendant North Carolina Department of Transportation ("DOT") was responsible for this project ("the DOT project"). In addition, a four-way intersection had been created by the addition of Palisades Parkway across Highway 49 from the terminus of Riverpointe Drive. Palisades Parkway was constructed by Crescent Resources, LLC ("Crescent") as a means of connecting its new housing development to Highway 49. Pursuant to an agreement with DOT, Crescent was permitted to construct Palisades Parkway and add designated turn lanes on Highway 49, which included two dedicated turn lanes for the west-bound lanes and one dedicated turn lane for the east-bound lanes. Subsequent to these projects, a person making a left-hand turn from Riverpointe Drive onto Highway 49 East had to drive over or by the following: one dedicated turn lane for west-bound traffic turning right onto Riverpointe Drive; two west-bound lanes of traffic; two dedicated turn lanes for west-bound traffic to turn left onto Palisades Parkway; one dedicated lane for eastbound traffic to turn left onto Riverpointe Drive; and two east-bound lanes of traffic. There was also a dedicated turn lane for east-bound traffic to turn right onto Palisades Parkway. In addition to being aware of east and west-bound traffic on Highway 49, a driver would have to be *170 aware of traffic from Palisades Parkway attempting to either turn onto east or west-bound Highway 49, or attempting to cross Highway 49 to access Riverpointe Drive.
The plan for the intersection included installation of traffic signals, which were to be funded by Crescent and installed by DOT. At the time of the 4 April 2009 collision no signals had been installed, even though one of DOT's district engineers had warned Crescent in 2006 that a signal was needed "at [that] time."
This action was brought in the Industrial Commission pursuant to the Tort Claims Act by Steven Grier Price, as the administrator of the estates of Furr and McAllister; and Daniel and Lisa Holt, as the administrators of Hunter's estate (together, "Plaintiffs"). Plaintiffs alleged that DOT negligently failed to install traffic signals at the intersection, and that this negligence was a proximate cause of the collision that killed Furr, McAllister, and Hunter.
The following relevant stipulations were entered by Plaintiffs and DOT:
3. This case arises out of a fatal automobile crash on 4 April 2009, at the intersection of Highway 49 and Riverpointe Drive. A car driven by Tyler Stasko collided with a vehicle driven by Cynthia Jean Furr. Highway 49 is a state maintained highway. Prior to the accident, Highway 49 had been widened and a fourth leg (Palisades Parkway) had been added to the intersection. The claimants contend that a proximate cause of the accident was the failure of [DOT] to install a traffic signal at the intersection. [DOT] stipulates that it had a duty to install a signal and that it breached that duty; however, [DOT] contends that said breach was not a proximate cause of the collision. Rather, [DOT] contends *701 that the acts of others, including the intervening and superseding criminal acts of Mr. Stasko and Ms. Atkinson, were the proximate cause of the collision. Cynthia Jean Furr and her daughter, McAllister Grier Furr Price, were killed in the car driven by Ms. Furr. Hunter Daniel Holt was killed as a passenger in the vehicle driven by Tyler Stasko.
4. At all times relevant to this action, Highway 49 was a road constructed and maintained by [DOT].
5. Originally, Highway 49 was a two lane road, but beginning in the early 2000's, [DOT] undertook a construction project to widen and improve Highway 49.
*171 6. During the project, Crescent Resources sought to construct a road opposite Riverpointe Drive, called Palisades Parkway. This road was intended to service a new subdivision known as The Palisades.
7. As a part of a conditional zoning agreement with the Mecklenburg County Planning Commission, Crescent agreed to fund a traffic signal at the Highway 49/Palisades Parkway/Riverpointe Drive intersection. Although Palisades Parkway was connected to Highway 49 prior to the subject accident, Crescent did not pay those funds at any time prior to the crash in 2009.
8. A traffic signal was not installed prior to the crash of 4 April 2009.
Because of DOT's stipulation that it had a duty to install a traffic signal at the intersection, and that it breached that duty, the sole issue before the Industrial Commission was whether DOT's breach of its duty was a proximate cause of the collision and resulting deaths. A deputy commissioner entered a decision and order on 14 February 2014. Because the deputy commissioner found that DOT could not have foreseen Stasko's criminal acts, the deputy commissioner concluded that the failure to erect a traffic signal was not a proximate cause of the deaths. Plaintiffs appealed to the Full Commission.
The Full Commission reversed the decision of the deputy commissioner, concluding:
[DOT's] breach of its duty to install a traffic signal at the ... intersection was a proximate cause of the accident that resulted in the deaths of Cynthia Furr, McAllister Furr Price and Hunter Holt. The Commission concludes that the intervening negligence of Mr. Stasko and Ms. Atkinson was also a proximate cause of the accident, but not the sole proximate cause. As such, [DOT] is not insulated from liability for its negligence.
In support of this conclusion, the Full Commission found the following relevant facts:
5. The compass orientation of curving Hwy 49 is such that the road travels east to west, with the easterly direction headed toward Charlotte and the westerly direction headed towards the Buster Boyd Bridge and South Carolina. There is a hill to the left of the intersection of *172 Hwy 49 and Riverpointe Drive that limits visibility of the intersection and drivers on Hwy 49.
6. The subject intersection was significantly altered during [DOT's] widening project and the construction by Crescent. Some of the modifications included a right hand turn lane onto Riverpointe Drive, dual left turn lanes on Hwy 49 onto Palisades Parkway, dual left turning lanes on Palisades Parkway onto Hwy 49 in the direction of South Carolina, and removal of the grass median between the east and west travel lanes in the eastern leg of the intersection towards Charlotte.
7. On 10 January 2006, [DOT's] District Engineer, Louis L. Mitchell, wrote to Kublins Transportation Group, a consultant for Crescent, and advised that the traffic signal needed to be installed "at this time." Although Crescent completed and [DOT] approved the intersection, Crescent did not fund and [DOT] did not install a traffic signal at that time. [DOT] did not install a traffic signal prior to 4 April 2009.
....
10. Detective Jesse D. Wood of the Charlotte-Mecklenburg Police Department was the lead investigator into this crash. Det. Wood testified, and the Commission finds, that prior to stopping at the Shopton Road intersection, Mr. Stasko had encountered several other traffic signals and had obeyed each. The Commission further finds that the greater weight of the evidence *702 shows that Mr. Stasko and Ms. Atkinson had not been racing prior to leaving the Shopton Road intersection.
....
16. Daren Marceau is an expert in civil engineering, traffic crash investigation, traffic crash reconstruction, and human factors. Mr. Marceau explained that there are national standards of American Association of State Highway and Transportation Officials ("AASHTO") regarding sight distances at intersections. Mr. Marceau testified, and the Commission finds, that even before the addition of Palisades Parkway, the sight distance to the east on Hwy 49 from Riverpointe Drive, and the sight distance of the *173 intersection for vehicles traveling west on Hwy 49 was inadequate due to a vertical curve, a hill, in the highway just before the Riverpointe intersection.
....
18. Mr. Marceau, Mr. Flanagan [DOT's expert] and Det. Wood all testified that if a traffic signal had been installed, the signal and presence of the intersection would have been visible to drivers traveling west for approximately one-half mile on Hwy 49. With the traffic signal visible for one-half mile to a driver traveling west on Hwy 49 at 86 mph, the presence of the intersection and the right of way direction from the signal would have been evident for approximately twenty-one (21) seconds. Without the signal, the intersection became visible at 650 feet and it would take the same driver only approximately five (5) seconds to cover that distance.
19. On 4 April 2009, there were no warning signs or other devices on Hwy 49 to warn drivers of the approaching Riverpointe intersection.
20. Plaintiff's expert, Mr. Marceau, reviewed nine similar accidents at the Riverpointe intersection which had occurred following the start of [DOT's] widening project and prior to the fatal crash on 4 April 2009. Mr. Marceau testified that in his expert opinion, and the Commission finds, that had the Riverpointe intersection been properly signalized, the crash on 4 April 2009 would not have occurred. Mr. Marceau based his opinion on the lack of visibility of the Riverpointe intersection and the driving behavior of Mr. Stasko prior to the crash. Mr. Marceau noted that both Mr. Stasko and Ms. Atkinson had stopped at traffic signals prior to the Riverpointe intersection and that there was no history of either of them running stoplights. Mr. Marceau testified, "I never had a doubt that they would've stopped at this traffic signal."[1]
*174 21. [DOT's] expert, Mr. Flanagan, did not have an opinion as to whether the Riverpointe intersection was dangerous or whether the lack of a signal contributed to the crash.
....
24. Given [DOT's] stipulation that a signal was needed, the lack of sight distance to and from the intersection, the speed limit of the roadway, the size of the intersection, and the number of previous similar accidents at this intersection, the Commission finds that the accident that resulted in the deaths of Cynthia Furr, McAllister Furr Price and Hunter Holt was a foreseeable consequence of [DOT's] stipulated breach of duty in failing to install a traffic signal at that intersection.
The Full Commission ruled that DOT's failure to install traffic signals at the intersection, which DOT stipulated constituted a breach of its duty to the public, was a proximate cause of the accident and resulting deaths. The Full Commission awarded the estates of the deceased $1,000,000.00 for each decedent. DOT appeals.
I.
DOT's sole argument on appeal is that the "Industrial Commission erred when it failed to determine that the criminal acts of third- *703 parties were the sole proximate cause of the collision." We disagree.
It is well established that
[t]he standard of review for an appeal from the Full Commission's decision under the Tort Claims Act "shall be for errors of law only under the same terms and conditions as govern appeals in ordinary civil actions, and the findings of fact of the Commission shall be conclusive if there is any competent evidence to support them." As long as there is competent evidence in support of the Commission's decision, it does not matter that there is evidence supporting a contrary finding. "The court's duty goes no further than to determine whether the record contains any evidence tending to support the finding." Thus, "when considering an appeal from the Commission, our Court is limited to two questions: (1) whether competent evidence exists to support the Commission's findings of fact, and (2) whether the Commission's findings of fact justify its conclusions of law and decision."
*175 Simmons v. Columbus Cty. Bd. of Educ., 171 N.C.App. 725, 727-28, 615 S.E.2d 69, 72 (2005) (citations omitted). " '[T]he [Industrial] Commission is the sole judge of the credibility of the witnesses and the [evidentiary] weight to be given their testimony,' findings of fact by the Commission may be set aside on appeal when there is a complete lack of competent evidence to support them[.]" Young v. Hickory Bus. Furniture, 353 N.C. 227, 230, 538 S.E.2d 912, 914 (2000) (citations and quotation marks omitted). Although DOT contests certain findings of fact, because we find competent record evidence supporting the relevant findings of fact recited above, they are binding on appeal. Id. We discuss the Full Commission's finding that the accident was "a foreseeable consequence of [DOT's] stipulated breach of duty in failing to install a traffic signal at that intersection" in greater detail below. See Gaines v. Cumberland Cnty. Hosp. Sys., Inc., 203 N.C.App. 213, 219, 692 S.E.2d 119, 122 (2010) (" '[p]roximate cause is ordinarily a question of fact' ") (citation omitted).
The dissenting opinion contends that we should reverse the Full Commission's decision and order for two distinct reasons: (1) because "DOT's breach of duty was not an actual cause of [P]laintiffs' injuries[,]" and (2) assuming arguendo DOT's breach of duty was an actual cause of the accident, the intentional criminal acts of Stasko and Atkinson were unforeseeable and therefore constituted "an independent, intervening cause absolving DOT of liability." However, only the proximate cause argument, and not any actual cause argument, was raised by DOT at trial, and now on appeal. DOT stipulated that "it had a duty to install a signal and that it breached that duty; [DOT] contend[ed at the hearing] that said breach was not a proximate cause of the collision." However, there is no mention of "actual cause" in the stipulations. Further, the Full Commission's decision and order identifies the only issue to be decided by the Full Commission, other than damages, as "[w]hether the death[s] of [Furr, McAllister, and Hunter were] proximately caused by the failure of [DOT] to install a traffic signal at the intersection of Pallisades Parkway and Highway 49[.]" This Court cannot, in this situation, base our opinion on arguments not first made before, and passed on by, the Industrial Commission.
Rule 10(a)(1) of the North Carolina Rules of Appellate Procedure states that in order "to preserve an issue for appellate review, a party must have presented to the trial court a timely request, objection, or motion, stating the specific grounds for the ruling the party desired the court to make" and must "obtain a ruling upon the party's request, objection, or motion." By failing to raise the issue *176 of default at trial, respondent has failed to preserve it for appellate review.
In re Foreclosure of a Deed of Trust Executed By Rawls, ---N.C.App. ----, ----, 777 S.E.2d 796, 801 (2015) (citation omitted).
In addition, the sole issue DOT brought forth on appeal was the following: "The Industrial Commission erred when it failed to determine that the criminal acts of third-parties were the sole proximate cause of the collision." This is the sole issue we are authorized to answer. N.C.R.App. P. 28(b)(6) ("Issues not presented in a party's brief, or in support of which no reason or *704 argument is stated, will be taken as abandoned."). Because DOT did not make a cause-in-fact, or "actual cause" argument on appeal, it is not properly before us. Id.; State v. Dinan, ---N.C.App. ----, ----, 757 S.E.2d 481, 485, disc. review denied, 367 N.C. 522, 762 S.E.2d 203 (2014). It is not the job of this Court to make DOT's argument for it. Id.
II.
DOT argues it was unforeseeable that Stasko and Atkinson would engage in a "drag race" "committed in complete disregard of the law." DOT argues: "Our State's jurisprudence has affirmed, and reaffirmed, the concept that 'the intervening or superseding criminal acts of another preclude liability of the initial negligent actor when the injury is caused by the criminal acts.' Tise v. Yates Construction Co., 345 N.C. 456, 460, 480 S.E.2d 677, 680 (1997)." DOT's selective quoting from Tise would seem to indicate that the "concept" discussed in Tise represents a per se rule. This is not the case, as the full quotation in Tise makes clear:
The general rule is that the intervening or superseding criminal acts of another preclude liability of the initial negligent actor when the injury is caused by the criminal acts. As our Court of Appeals noted ...,
[t]he doctrine of superseding, or intervening, negligence is well established in our law. In order for an intervening cause to relieve the original wrongdoer of liability, the intervening cause must be a new cause, which intervenes between the original negligent act and the injury ultimately suffered, and which breaks the chain of causation set in motion by the original wrongdoer and becomes itself solely responsible for the injury.
*177 Id. at 460-61, 480 S.E.2d at 680 (emphasis added) (citations omitted). "The test by which the negligent conduct of one is to be insulated as a matter of law by the independent negligent act of another[ ] is reasonable unforeseeability on the part of the original actor of the subsequent intervening act and resultant injury." Id. at 461, 480 S.E.2d at 680-81 (emphasis added) (citations and quotation marks omitted). This is true whether or not the alleged superseding act is criminal in nature. See Id.
Regarding superseding proximate causes, our Supreme Court has held:
It is immaterial how many new events or forces have been introduced if the original cause remains operative and in force. In order for the conduct of the intervening agent to break the sequence of events and stay the operative force of the negligence of the original wrongdoer, the intervening conduct must be of such nature and kind that the original wrongdoer had no reasonable ground to anticipate it.
....
[T]he principle is stated this way: "In order to be effective as a cause superseding prior negligence, the new, independent, intervening cause must be one not produced by the wrongful act or omission, but independent of it, and adequate to bring about the injurious result; a cause which interrupts the natural sequence of events, turns aside their course, prevents the natural and probable result of the original act or omission, and produces a different result, that reasonably might not have been anticipated."
"If the intervening cause is in reality only a condition on or through which the negligence of the defendant operates to produce an injurious result, it does not break the line of causation so as to relieve the original wrongdoer from responsibility for the injury. A superseding cause cannot be predicated on acts which do not affect the final result of negligence otherwise than to divert the effect of the negligence temporarily, or of circumstances which merely accelerate such result."
" 'The inquiry must, therefore, always be whether there was any intermediate cause disconnected from the primary fault, and self-operating, which produced the injury.' "
*178 Ordinarily, "the connection is not actually broken if the intervening event is one which might in the natural and ordinary course of things, be anticipated as not entirely *705 improbable, and the defendant's negligence is an essential link in the chain of causation."
The test of foreseeability as an element of proximate cause does not require that the tortfeasor should have been able to foresee the injury in the precise form in which it occurred. "All that the plaintiff is required to prove on the question of foreseeability, in determining proximate cause, is that in 'the exercise of reasonable care, the defendant might have foreseen that some injury would result from his act or omission, or that consequences of a generally injurious nature might have been expected.' "
Riddle v. Artis, 243 N.C. 668, 671-72, 91 S.E.2d 894, 896-97 (1956) (citations omitted).
We agree with the Full Commission that the acts of Stasko and Atkinson combined with DOT's breach of duty to cause the collision and resulting deaths. We further hold that it was reasonably foreseeable that a vehicle speeding toward the intersection, unregulated by any traffic signal, could lead to the type of accident and injury involved in this case.
In opposition to this holding, DOT argues:
Traffic signals are not intended as a mechanism to keep individuals from engaging in criminal acts. While it may be foreseeable to Defendant that an individual may exceed the posted speed limit by 5 or even 10 miles per hour, it is impossible for Defendant to design a roadway upon which drivers may safely race one another at almost 90 miles per hour. Traffic laws and traffic control devices are only effective when individuals obey them.
DOT's focus on the criminal nature of Stasko's actions is misplaced. All that is required is that DOT "might have foreseen that some injury would result from [its] act or omission, or that consequences of a generally injurious nature might have been expected." Riddle, 243 N.C. at 672, 91 S.E.2d at 897 (citation and quotation marks omitted). Clearly, it was foreseeable that the failure to install traffic lights at a dangerous and complicated intersection could result in "some injury" or "consequences of a generally injurious nature." Id. The Full Commission found as fact *179 that " the sight distance to the east on Hwy 49 from Riverpointe Drive, and the sight distance of the intersection for vehicles travelling west on Hwy 49 was inadequate due to a vertical curve, a hill, in the highway just before the Riverpointe intersection." The Full Commission also found that the expanded size of the intersection, including the multiple travel and turning lanes, made the intersection more dangerous than it had been prior to the DOT project. The Full Commission further found:
With the traffic signal visible for one-half mile to a driver traveling west on Hwy 49 at 86 mph, the presence of the intersection and the right of way direction from the signal would have been evident for approximately twenty-one (21) seconds. Without the signal, the intersection became visible at 650 feet and it would take the same driver only approximately five (5) seconds to cover that distance. R210
One of the more foreseeable scenarios at the intersection would include a vehicle cresting the hill in the westbound lane at a high rate of speed and impacting another vehicle attempting to cross over the westbound lanes of Highway 49. The fact that Stasko was speeding, and thus breaking the law, did not render his actions unforeseeable. Id. at 669, 672, 91 S.E.2d at 895-97 (the defendant's actions could be found to be a proximate cause of an accident even though concurrent tortfeasor was operating his vehicle "at a high and unlawful rate of speed"). Speeding is likely the most prevalent infraction committed upon our highway system. Though the State refers repeatedly to Stasko's actions as "drag racing," Stasko's reason for speeding is immaterial. "The test of foreseeability as an element of proximate cause does not require that the tortfeasor should have been able to foresee the injury in the precise form in which it occurred." Riddle, 243 N.C. at 672, 91 S.E.2d at 897. Nor do we find Stasko's very high rate of speed to have rendered the accident unforeseeable as a matter of law.
The Industrial Commission was the trier of fact. "What is the proximate or a proximate cause of an injury is ordinarily a *706 question for [the trier of fact]. It is to be determined as a fact from the attendant circumstances. Conflicting inferences of causation arising from the evidence carry the case to the [trier of fact]." Short v. Chapman, 261 N.C. 674, 680, 136 S.E.2d 40, 45 (1964) (citation omitted). Contrary to the implication in DOT's argument, proximate cause need not be proven to an absolute certainty. Id. at 682, 136 S.E.2d at 47 ("absolute certainty ... that [the injury] proximately resulted from the wrongful act need not be shown to support an instruction thereon") (citation omitted); Id. at 681, 136 S.E.2d at 46 ("if more than one legitimate inference can be drawn from *180 the evidence, the question of proximate cause is to be determined by the [trier of fact]") (citation omitted). As this Court has stated:
Proximate cause is a cause which in natural and continuous sequence, unbroken by any new and independent cause, produced the plaintiff's injuries, and without which the injuries would not have occurred, and one from which a person of ordinary prudence could have reasonably foreseen that such a result, or consequences of a generally injurious nature, was probable under all the facts as they existed.
"[I]t is only in exceptional cases, in which reasonable minds cannot differ as to foreseeability of injury, that a court should decide proximate cause as a matter of law. Proximate cause is ordinarily a question of fact for the jury, to be solved by the exercise of good common sense in the consideration of the evidence of each particular case."
Gaines, 203 N.C.App. at 219, 692 S.E.2d at 122 (emphasis added) (citations omitted).
In the present case it is, of course, conceivable that the accident would have occurred even had there been properly functioning traffic signals in the intersection. It is conceivable that Stasko would have failed to see the light, or that he would have ignored a red light at the peril of his life. It is also conceivable, and much more likely, that Stasko would have seen a red light and stopped or slowed, avoiding the accident. As DOT itself argues, "had [Stasko] simply reduced his speed, ... Furr would have had additional time to move out of the path of [Stasko's] vehicle." Had there been a properly functioning traffic signal, Stasko would have had approximately sixteen additional seconds to notice the intersection and initiate deceleration. It was the province of the Full Commission, as trier of fact, to make a determination based on the facts, law, and common sense, concerning whether Stasko's high-speed racing behavior indicated that he would have completely ignored a properly functioning traffic signal. Id. The Full Commission found that it did not.
Further, had the signal been red for traffic on Highway 49, Furr would not have needed to stop in the intersection to wait for eastbound Highway 49 traffic to clear. Had the signal been green for Highway 49 traffic, Furr would have been safely stopped on Riverpointe Drive awaiting the signal change. We find the Full Commission's finding that DOT's breach of duty was a proximate cause of the accident to be supported *181 by the evidence, and to have been "the exercise of good common sense in the consideration of the evidence [in this] case." Id. (citation omitted).
The dissenting opinion states that "[t]he determinative factor is not whether Stasko would have obeyed or ignored the traffic signal but whether the lack of a traffic signal was the proximate cause of the collision." It is true that the relevant issue is whether "the lack of a traffic signal was [a ] proximate cause of the collision." However, as the existence of proximate cause is, in this case, a question of fact, it is appropriately "an inference of fact to be drawn from other facts and circumstances." Hairston v. Alexander Tank & Equip. Co., 310 N.C. 227, 234, 311 S.E.2d 559, 566 (1984). There is a difference between inference and mere speculation or conjecture, and Mr. Marceau was qualified to give his opinion that, based on the facts and circumstances before him, the accident would not have occurred absent DOT's breach of its duty.
DOT argues that the "Industrial Commission has essentially concluded that [DOT] is, and shall be, strictly liable for virtually any accident that occurs on State roadways."
*707 Our decision in no manner leads to that result. It is not only foreseeable, but inevitable, that vehicles will speed on the roadways managed and maintained by DOT. We cannot agree with the deputy commissioner and the dissenting opinion that it is only foreseeable that motorists will speed five to ten miles per hour over the posted limit, when it is common knowledge that violations for speeds at or exceeding Stasko's in this instance are, sadly, too common. The dissenting opinion poses several "what if" questions:
Had there been a properly functioning traffic signal, neither this Court nor any expert in North Carolina can say that, based solely on that premise, Stasko would have had sixteen additional seconds to initiate deceleration. What if the traffic signal, conceivably visible one[-]half miles from the intersection, or for twenty-one seconds based on Stasko's speed, was green? Would Stasko have initiated deceleration? What if Stasko was looking behind for Atkinson's car and did not notice that there was a traffic signal ahead? What if the traffic signal turned yellow at the moment Stasko was cresting the hill, around 650 feet from the intersection? What if Stasko did not decelerate for the yellow light and consequently drove through a "fresh" red light, and Furr immediately went through the green light on Riverpointe Drive, and their cars collided in the intersection? Would DOT be liable based on the incline of the hill, lack of sight distance, or roadway design?
*182 As an initial matter, because there was competent evidence in support of both the finding that the traffic signal would have been visible for approximately one-half mile on Stasko's approach, and the finding that the signal would, based on Stasko's speed, have alerted Stasko to the presence of the intersection approximately twenty-one seconds before he would have entered the intersection, we must operate based upon the assumption that these facts are true. Simmons, 171 N.C.App. at 727-28, 615 S.E.2d at 72. It is not only a red traffic signal that alerts a driver to the presence of an upcoming intersection, and thus warns that driver of potential traffic entering the intersection, but also the mere presence of the signal which alerts drivers to the fact of the approaching intersection. It is a reasonable inference that a driver will prepare for the potential need to stop even when approaching a green signal, as a green signal will always turn from green to yellow to red and back again. A green signal that is a half-mile distant has a very reasonable chance of changing to red before a driver reaches the intersection it governs, even when that driver is driving at a very high rate of speed. It is highly unlikely that Stasko would have been looking behind him, in search of Atkinson or for any other reason, for twenty-one seconds. It is also highly unlikely Stasko would have taken his eyes off the road in front of him for sixteen or even five seconds.[2] And, as stated above, had a properly functioning signal been green for Stasko, it would have been red for Furr, and she would not have entered the intersection. It is of course possible that Stasko would have still collided with Furr even had there been a properly functioning traffic signal. However, Plaintiffs' burden is not so high as to require they prove to an absolute certainty that the accident would not have occurred absent DOT's breach of its duty. As correctly noted by the dissenting opinion, "Proximate cause is an inference of fact to be drawn from other facts and circumstances." Hairston, 310 N.C. at 234, 311 S.E.2d at 566. Though it is possible that acts accompanying Stasko's "racing" behavior, other than speeding, played a role in the accident, we cannot say that this potentiality breaks the chain of proximate cause as a matter of law. The Full Commission considered all the facts surrounding Stasko's racing behavior, but still inferred proximate cause from the totality of the facts and circumstances *708 before it. This was the Full Commission's province as the trier of fact, not ours. *183 Not every intersection requires traffic signals. It is the duty of DOT to take reasonable care in identifying those intersections that do require traffic signals, for both the efficient regulation of traffic and the safety of motorists and pedestrians. If an accident occurs at an intersection not requiring a traffic signal, DOT will not be held liable for failing to erect a traffic signal, even where a signal would have prevented the accident. That is because DOT cannot be held liable where it has breached no duty. Where DOT has installed and maintained properly functioning traffic signals, it will not be found liable when accidents like the one before us occur; again, because it will have breached no duty with regard to the traffic signal. In answer to the dissenting opinion's query on this matter, DOT could be held liable for an accident caused by "a driver who is texting and approaching an unregulated intersection" if DOT had a duty to install a traffic signal at that intersection, DOT breached that duty, and the breach of that duty was found by the trier of fact to be a proximate cause of the accident. This is true even if the driver's texting was a concurrent proximate cause. DOT could not be held liable if the trier of fact rationally determined that the lack of a traffic signal was not a proximate cause of the accident, or that the texting activity in that situation was such as to break the causal link and was therefore the sole proximate cause of the resulting accident. When there is a conflict in the evidence, or evidence may reasonably be interpreted in differing ways, it is generally the province of the trier of fact to make the proximate cause determination, and that is what has happened in this case. The dissenting opinion places its focus on what it determines was the unforeseeability of Stasko's egregious conduct. However, in this case, the relevant issue was whether it was foreseeable that absent a functioning traffic signal, a speeding motorist would crest the hill approaching the intersection and collide with another motorist entering the intersection from another direction.
DOT and the dissenting opinion rely on Tise. We simply note that in Tise our Supreme Court held:
In the instant case, the police officers responding to the initial call to the construction site investigated and acted to prevent the criminal acts of unknown third parties. While the officers were called to the site to investigate possible tampering with the grader equipment, Tise's injuries caused by the criminal acts of third parties in their unauthorized operation of the grader could not have been foreseeable from the officers' acts of attempting to disable the grader. The criminal acts in this case were an *184 intervening cause that relieved the City of any actionable negligence by cutting off the proximate cause flowing from the acts of the agents of the City in attempting to disable the grader. This superseding cause was a new cause, which intervened between the original negligent act of the City and the injury ultimately suffered by Tise. The third party criminal acts in this case broke the chain of causation set in motion by the police officers.
Tise, 345 N.C. at 461-62, 480 S.E.2d at 681. Our Supreme Court reached this holding by reasoning that even if the police were negligent in failing to properly secure a construction site subsequent to having received a call pertaining to alleged tampering with construction equipment, the result of that negligence, an officer who subsequently returned to the scene and was crushed to death by stolen construction equipment as he sat in his cruiser on a nearby street, was not foreseeable. These facts are in stark contrast to a situation where a speeding automobile enters an intersection and collides with another automobile. The first fact pattern borders on the bizarre; the second is all too common.
Further, not all accidents occurring at intersections where DOT has breached its duty to install traffic signals will lead to DOT liability, because proximate cause must first be proved. If a properly functioning traffic signal simply could not have prevented an accident, the lack of a traffic signal cannot be a proximate cause of that accident as a matter *709 of law.[3] If there is some question concerning whether a properly functioning traffic signal could have prevented an accident in an intersection in which DOT breached its duty to install same, the issue of proximate cause is one of fact to be determined by the trier of fact. If, for example, Stasko had been ignoring red lights prior to the collision in the intersection, it is quite possible the Full Commission, and this Court, would have reached a different decision. However, those are not the facts before us. Our holding stands for the unremarkable proposition that DOT is liable for its breaches of duty when those breaches result in the kind of injury the intended prevention of which created the duty in the first place.
The dissenting opinion contends that our holding "will lead to an impractical standard with far-reaching consequences." We disagree. We *185 have simply applied well-established standards to the facts before us. On the other hand, it is difficult to imagine under what circumstances DOT could be held liable for breaching its duty to install traffic signals in dangerous intersections were we to adopt the reasoning of the dissenting opinion. This is so because it would rarely, if ever, be possible to prove that the installation of a properly functioning traffic signal would have, without any doubt, prevented an accident from occurring in any particular intersection. There are infinite potential variables all acting together to produce any singular result. Were the trier of fact required to rule out with absolute certainty the possibility that any of these potential variables were the actual sole proximate cause of an accident, it is difficult to see how a plaintiff could ever sufficiently prove the proximate cause necessary to make a case for negligence. However, under our law, plaintiffs are not saddled with this impossible burden. Because we find there was competent evidence supporting the Full Commission's findings of fact, and because these findings of fact were sufficient to support its conclusions of law and decision, we must defer to the Full Commission's determinations of credibility and the weight to be given the evidence. Young, 353 N.C. at 230, 538 S.E.2d at 914.
AFFIRMED.
Judge DAVIS concurs.
Judge ELMORE dissents with separate opinion.

DOT contests this portion of finding of fact 20. However, this sentence merely states what Mr. Marceau's testimony was. The Full Commission did not find as fact that Stasko or Atkinson would, without a doubt, have stopped at the traffic signal had one been present. We assume, however, that Mr. Marceau's testimony informed the Full Commission's proximate cause findings.

The Full Commission found as fact: "With the traffic signal visible for one-half mile to a driver traveling west on Hwy 49 at 86 mph, the presence of the intersection and the right of way direction from the signal would have been evident for approximately twenty-one (21) seconds. Without the signal, the intersection became visible at 650 feet and it would take the same driver only approximately five (5) seconds to cover that distance." The addition of a traffic signal would have provided Stasko an additional sixteen seconds in which to become aware of the approaching intersection.

For example, proximate cause in the present case could not be proven based upon the lack of a traffic signal if the accident resulted from Stasko suffering a medical emergency and losing consciousness instead of Stasko speeding. This hypothetical presumes the medical emergency occurred at a time before a properly functioning traffic signal would have had an opportunity to regulate Stasko's driving.