An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-920

Filed 21 January 2026

North Carolina Industrial Commission, I.C. No. TA-26268

DANIEL HUBERT ROSS, Plaintiff,

v.

NORTH CAROLINA DEPARTMENT OF ADULT CORRECTION, FORMERLY A PART OF THE NORTH CAROLINA DEPARTMENT OF PUBLIC SAFETY, AND THE NORTH CAROLINA STATE BUREAU OF INVESTIGATION, Defendants.

Appeal by plaintiff from decision and order entered 17 April 2024 by the Full Commission in the North Carolina Industrial Commission. Heard in the Court of Appeals 21 May 2025.

*Law Office of Barry Nakell, by Barry Nakell, for plaintiff.*

*Attorney General Jeff Jackson, by Assistant Attorney General Daniel J. Burke, for defendants.*

FREEMAN, Judge.

Plaintiff Daniel Ross appeals from a decision and order by the Full Commission of the North Carolina Industrial Commission denying Ross's claims of negligence against the North Carolina Department of Public Safety ("DPS") and the North

Carolina State Bureau of Investigation ("SBI"). Because Ross failed to challenge relevant factual findings and conclusions of law on appeal related to SBI, and failed to allege the required elements of negligence against DPS, we affirm.

## I. Factual and Procedural Background

Ross "was convicted of first-degree murder in 1969." *Ross v. N.C. State Bureau of Investigation*, No. COA17-794, 259 N.C. App. 424, 2018 WL 2016405, at *1 (May 1, 2018) (unpublished) (hereinafter "*Ross I*"). "The Fourth Circuit Court of Appeals set [Ross's] conviction aside, declaring it null and void, in 1983." *Id.*; *see Ross v. Reed*, 704 F.2d 705, 709 (4th Cir. 1983). The following year, "[t]he United States Supreme Court affirmed the Fourth Circuit's ruling in *Reed v. Ross*, 468 U.S. 1, 82 L.Ed.2d 1 (1984)." *Ross I*, 2018 WL 2016405, at *1. On 1 June 1983, the Eastern District of North Carolina entered an order issuing a writ of habeas corpus, setting aside Ross's conviction as "null and void," and "of no legal effect." *Ross v. Reed,* No. 78–62–HC, order at 2 (E.D.N.C. June 1, 1983).

Following the order setting aside Ross's conviction, the SBI's database was updated to include the comment: "CONVICTION SET ASIDE-NULL AND VOID-OF NO LEGAL EFFECT." The parties dispute exactly when this notation was added; however, SBI specifically alleges "SBI reported Ross's unconstitutional conviction in its database from on or about March 1969 until January 27, 2020."

On 2 November 2004, Ross's set-aside conviction was expunged. But this expungement was rescinded in January 2005 because Ross received an expungement

for another conviction. *See* N.C.G.S. § 15A–146(a) (2004) (prohibiting more than one expungement).

In 2005, Ross petitioned the Industrial Commission for monetary relief related to his conviction and imprisonment under N.C.G.S. § 148-82; his petition was denied. Subsequently in 2006, Ross sued the State of North Carolina and the Industrial Commission in the United States District Court for the Eastern District of North Carolina, alleging a myriad of constitutional claims and sought federal expungement. In 2007, the District Court denied Ross's constitutional claim and stated, "Ross must seek expungement of his state criminal record through the state court system." *Ross v. North Carolina*, No. 5:06-CV-218D, 2007 WL 4118884, at *8 (E.D.N.C. Jan. 31, 2007), *aff'd*, 239 F. App'x 782 (4th Cir. 2007).

In 2013, Ross was hired as a security guard in Virginia; however, this employment was contingent on him passing a criminal background check. The requesting agency contacted the FBI and the FBI provided that agency with Ross's criminal history. These documents included Ross's set-aside murder conviction, but there was no indication that the conviction was set aside, null and void, or of no legal effect. Consequently, Ross lost his job as a security guard.

In 2015, Ross filed a complaint in the Industrial Commission under the State Tort Claims Act, alleging the SBI negligently maintained his criminal record. *See Ross v. N.C. State Bureau of Investigation*, No. COA20-599, 279 N.C. App. 107, 2021 WL 3625362 (Aug. 17, 2021) (unpublished). Ross argued that SBI breached their

duty to update their system after his habeas proceeding, which caused him to lose his job. *Id.* at *1.

Ross's claim was heard by a deputy commissioner in February 2016. At this hearing, SBI presented evidence of Ross's conviction record, dated 2015, which included the proper annotation. *Id.* SBI further provided "an accompanying affidavit and testimony from an SBI agent who stated under oath that the annotation of the murder conviction was entered on Ross's record in the SBI's system 'on or before August 19, 2011.' " *Id.* The deputy commissioner denied Ross's claim, concluding that SBI fulfilled its duty to maintain Ross' record. *Id.*

Subsequently, Ross appealed to the Full Commission, and in 2017, the Full Commission affirmed the deputy commissioner's denial of Ross's claim. *Id.* at *2. The Full Commission "concluded that Ross failed to satisfy his burden of proof to show that the SBI was negligent because the SBI fulfilled its statutory duty to maintain [Ross's] criminal record when it added the annotation to his conviction in 2011." *Id.* Further, "any error in a database search and dissemination of the resulting information on the part of the FBI was not attributable to the SBI." *Id.*

Ross then appealed to this Court. *See Ross I*, 2018 WL 2016405. We affirmed the Commission's decision and specifically held that SBI "presented competent evidence showing [it] accurately updated and maintained [Ross's] criminal record." *Id.* at *4.

Later that same year, Ross brought an injunction action in United States

District Court for the Eastern District of North Carolina to enforce the "null and void" order asking SBI to delete or expunge his set-aside murder conviction from his criminal history records. *See Ross v. Hooks & Schurmeier*, No. 5:17-CV-510-H (E.D.N.C. 2019). The District Court stated in its subsequent order, to "carry out the intent of its prior order," Ross's 1969 murder conviction was to be expunged from his criminal record. *Id.* Further, the District Court expressly noted that "[t]he Industrial Commission found that SBI was not negligent in the maintenance of its records." *Id.*

Following that order, Ross's unconstitutional conviction was expunged by an order issued in North Carolina Superior Court. Jodi Harrison, Deputy General Counsel for DPS, submitted an affidavit describing that as of 27 January 2019, all criminal records related to Ross's 1969 set-aside conviction were expunged from DPS and SBI databases.

After, Ross submitted motions to the Industrial Commission under Rule 60(b)(1), (3), and (6) for reconsideration and relief from decision and order. The full Industrial Commission denied Ross's motion. Ross appealed the Industrial Commission's decision, and this Court affirmed that decision. *See Ross v. N.C. State Bureau of Investigation*, No. COA20-599, 279 N.C. App. 107, 2021 WL 3625362, (Aug. 17, 2021) (unpublished) (hereinafter "*Ross II*").

The present appeal originates from a tort claim affidavit filed by Ross on 16 May 2017 in the Industrial Commission against DPS. In his affidavit, Ross named Secretary Erik A. Hooks, Chief Deputy Pamela Cashwell, and DPS "Offendee Public

Information" as defendants and alleged one million dollars in damages. On 23 August 2017, Ross's claims were temporarily removed from the Industrial Commission's active docket until the completion of other related pending litigation.

On 15 November 2019, Ross filed an amended complaint. With counsel, Ross moved for leave to file a second amended complaint. The Industrial Commission granted Ross's motion, and he filed a second amended complaint on 2 April 2020, adding SBI, the North Carolina Administrative Office of the Courts ("AOC"), the Wake County Clerk of Superior Court, and the North Carolina Department of Justice ("DOJ"), as defendants.

The AOC, Wake County Clerk of Superior Court, and DOJ were dismissed before the case proceeded to hearing.[1] A senior deputy commissioner limited Ross's claims against DPS to occurrences after 16 May 2014, and against SBI to occurrences after 25 February 2017.

After an evidentiary hearing, the senior deputy commissioner dismissed Ross's claim against both remaining defendants, DPS and SBI. On 16 June 2023, Ross filed a motion to reconsider, and on 28 June 2023, a deputy commissioner filed an amended order again dismissing Ross's claim against DPS and the SBI.

---

[1] The record on appeal does not include the Industrial Commission's 9 March 2022 and 27 June 2022 orders that granted the North Carolina Administrative Office of the Courts, the Wake County Clerk of Superior Court, and the North Carolina Department of Justice's motions for summary judgment. However, the parties' brief, and later orders of the Industrial Commission, reference these orders.

Shortly after, Ross filed notice of appeal to the Full Commission and on 30 April 2024, the Full Commission rendered a decision denying Ross's claim against DPS and SBI.  As relevant here, the Full Commission found:

12. Plaintiff expends much effort in the instant claim arguing that, at best, Defendant NCSBI has shown only that its database was updated with the notation no earlier than April 9, 2015 (the date of the printout that Defendant NCSBI produced in response to Plaintiff's filing, on March 24, 2015, of his tort claim in I.C. No. TA-24836 relating to the alleged loss of his . . . job that had occurred in February 2014). Any claim for damages related to the alleged loss of the . . . job as against Defendant NCSBI, including but not limited to Plaintiff's contention that Defendant NCSBI obtained judgment in its favor in I.C. No. TA-24836 through fraud on the court is barred by the doctrine of res judicata, but the Full Commission has considered Plaintiff's presentation as evidence on the question of when Defendant NCSBI in fact added the notation to its database.

13. Plaintiff relies heavily on the Declaration of Monica D. Hamner, which was made during Plaintiff's lawsuit in Maryland federal district court relating to the denial of Plaintiff's attempt to purchase a firearm in Maryland in 2011. According to the Hamner affidavit, a check of Defendant NCSBI's database on Plaintiff made by the FBI's National Instant Criminal Background Check System ("NICS") on February 15, 2011 in connection with that attempted firearm purchase revealed Plaintiff's 1969 murder conviction. The affidavit further stated that, at some point after February 15, 2011, upon further review, NICS contacted Defendant NCSBI and was provided with "disposition information" that had not been available to NICS during the initial check, to wit, that Plaintiff's 1969 murder conviction had been set aside, was null and void, and had no legal effect. The Hamner affidavit went on to state that this "disposition information" had not been available to NICS during the initial check because of an

issue with "specified access permission." Overall, the Full Commission finds the Hamner affidavit to be unclear as to the question of whether, as of February 15, 2011, Defendant NCSBI's database included the notation about Plaintiff's 1969 murder conviction.

14. Plaintiff may have raised an issue of fact as to whether, in fact, Defendant NCSBI's database was not actually updated with the notation until after August 19, 2011 (the update date that Defendant NCSBI asserted during the trial of I.C. No. TA-24836), and the evidence of record in the instant tort claim is unclear as to whether it was or not. However, based upon the preponderance of the evidence in view of the entire record, the Full Commission finds that Plaintiff has failed to prove that the notation was not on Defendant NCSBI's database at any time after the entry of the June 1, 1983 federal court order requiring it. Plaintiff has pointed to background checks on Plaintiff that were conducted on various dates, including but not limited to the check conducted by the Maryland State Police regarding the Allied Barton job in 2014, that revealed Plaintiff's 1969 murder conviction, but it is not clear from the record that those checks did not also turn up the notation to the effect that the conviction had been set aside, was null and void, and had no legal effect. On this record, it is just as likely that the notation was there (and the other agencies ignored it or failed to give it appropriate consideration) as it is that the notation was not there. Further, on at least one occasion (the background check conducted for Plaintiff's application for a private security registration in the Commonwealth of Virginia in 2003, which application was approved), apparently whatever information was provided from Defendant NCSBI's database was not disqualifying for Plaintiff.

15. As to Defendant NCSBI, Plaintiff's damages claims in the instant claim are limited to occurrences on or after February 25, 2017, and the evidence of record clearly shows that, by that date, Defendant NCSBI's criminal record history database had long contained the notation that Plaintiff's 1969 murder conviction had been set aside, was

null and void, and had no legal effect as of June 1, 1983.

16. [Ross] alleges that, after he moved to Maryland in approximately 2000, got married, and then worked in several positions in and around Maryland and the D.C. area for approximately 16 years, he lost at least two solid career jobs and/or promotional opportunities [. . .] He also claims he lost his marriage during that period because of various background checks that were done on him in which Defendant's NCSBI's database (due to Defendant NCSBI's alleged negligence) reported his 1969 murder conviction. [Ross] further alleges that he continued to suffer the ill effects of Defendant NCSBI's alleged negligence in his jobs prospects after returning to North Carolina in 2016, and he alleges that, instead of the secure retirement that he should be enjoying, he has been left with loads of crushing debt.

. . . .

18. Based upon the preponderance of the evidence in view of the entire record, the Full commission finds that, by the terms of the 1983 federal court order, Defendants NCSBI and NCDPS were not required to "expunge" any and all records in their databases related to Plaintiff's 1969 murder conviction. In reaching this finding, the Full Commission considers that the 1983 federal court order did not use the specific legal term of art "expunge" in any form, and even if it had, it is not clear that an order from the federal court in and of itself would have required or authorized North Carolina state agencies to take any expungement action. The later 2007 federal court order correctly noted that Plaintiff would have to see expungement of the 1969 murder conviction through the state courts, and, indeed, Plaintiff already had attempted that route in 2004-05 but had been denied because of the prior expungement of another record. The 2019 federal court order specific "clarifie[d]" the 1983 federal court order to "enter" the specific directive that the North Carolina state agencies "expunge" (the first time any court ever used that specific legal term of art) from their databases any

records related to Plaintiff's 1969 murder conviction. After the entry of that order, Defendants NCDPS and NCSBI promptly removed all references to Plaintiff's 1969 murder conviction from their databases.

. . . .

21. Based upon the preponderance of the evidence in view of the entire record, the Full Commission finds that even if Plaintiff established that either Defendant NCSBI or Defendant NCDPS failed to keep an accurate, updated criminal history for him on their databases, Plaintiff's allegations of damages in the instant claim are so non-specific, speculative, and/or conclusory as to not provide adequate support for a finding that his alleged damages were actually or proximately caused by any breach of duty by Defendants.

Ross timely filed written notice of appeal to this Court.

## II.    Jurisdiction

Because Ross appeals a decision of the Full Commission, this Court has jurisdiction over his appeal under N.C.G.S. § 143-293 (2023).

## III.    Standard of Review

"[W]hen considering an appeal from the Commission," this Court "is limited to two questions: (1) whether competent evidence exists to support the Commission's findings of fact, and (2) whether the Commission's findings of fact justify its conclusions of law and decision." *Simmons v. N.C. Dep't of Transp.*, 128 N.C. App. 402, 405–06 (1998).  Therefore, "the findings of fact of the Commission shall be conclusive if there is any competent evidence to support them."  N.C.G.S. § 143-293.

"Unchallenged findings of fact are presumed to be supported by competent evidence

and are binding on appeal." *Allred v. Exceptional Landscapes, Inc.*, 227 N.C. App. 229, 232 (2013). Further, "[t]he findings of the Industrial Commission are conclusive on appeal when supported by competent evidence even though there may be evidence to support a contrary finding." *Gilliam v. Perdue Farms*, 112 N.C. App. 535, 536 (1993).

## IV. Discussion

On appeal, Ross challenges factual finding 18—which interprets the terms of the 1983 federal court order to not require expungement—and urges this Court to invalidate this factual finding by reading previous federal court orders to require DPS and SBI "to delete, destroy, and expunge all records of Ross's unconstitutional conviction, not just annotate them." Alternatively, Ross argues "there is no competent evidence that SBI annotated its report of [his] unconstitutional conviction at any time before April 9, 2015."

Ultimately, Ross contends both DPS and SBI were "negligent in the maintenance of Ross's criminal history records by continuing to report his unconstitutional conviction without qualification or annotation." Thus, Ross alleges he suffered damages as a proximate result of this negligence. We address each argument in turn.

## A. Expungement

As an initial matter, the original 1983 order declared Ross's conviction to be "set aside, declared null and void and of no legal effect." *Reed*, No. 78–62–HC, order

at 2 (E.D.N.C. June 1, 1983). In 2019, the federal district court, "expressly declined" to address whether the original 1983 order required expungement, but ordered Ross's conviction be expunged. *Ross II*, 2021 WL 3625362, at *4 (citing *Ross v. Hooks & Schurmeier*, No. 5:17-CV-510-H (E.D.N.C. 2019)). This Court noted, "the federal district court's 2019 order did not hold that the court's original 1983 habeas ruling required Ross's conviction to be expunged." *Id.* (emphasis omitted). Thus, no opinion of state or federal court has ever interpreted the original 1983 order to require SBI or DPS to issue expungement. Likewise, we decline to do so here.

**B. Competent Evidence**

Ross also argues "there is no competent evidence that SBI annotated its report of [his] unconstitutional conviction at any time before April 9, 2015." Specifically, Ross contends testimony related to a notation made as of 19 August 2011 is unsupported by other documentary evidence and is the only evidence that points to a notation before April 9, 2015. On appeal, Ross plainly states the "SBI claim and Full Commission conclusion are not supported by any competent evidence" but does not challenge any specific factual findings, or conclusions of law.

"In Ross's first appeal to this Court, we affirmed the Full Commission's decision, holding that the SBI 'presented competent evidence showing [it] accurately updated and maintained [Ross]'s criminal record,' and that this was competent evidence supporting the Commission's findings of fact and resulting conclusions of law." *Ross II*, 2021 WL 3625362 at *2 (alterations in original) (cleaned up). This

evidence, held as competent by this Court in *Ross I*, was SBI agent testimony that a notation in Ross's criminal record had been included as of 19 August 2011. *Ross I,* 2018 WL 2016405, at *4.

In *Ross II*, Ross challenged the credibility of this evidence through Rule 60(b)(1), (3), and (6) motions for reconsideration and relief from decision and order. 2021 WL 3625362, at *1. Specifically, Ross argued:

> that the Commission erred by denying his Rule 60(b) motion because the SBI concealed material facts and presented deceptive or misleading evidence before the Industrial Commission and before this Court in his prior appeal, which "constituted fraud on both tribunals." Specifically, Ross assert[ed] that the SBI used the 2015 printout of his criminal record, and the accompanying affidavit and testimony, to create a "deception" or "false impression" that the SBI had annotated his criminal record in 2011. Ross assert[ed] that the printout itself contained no support for the 2011 date and there was no basis for the SBI's sworn testimony that the annotation occurred in 2011 or earlier.

*Id.* This Court affirmed the Industrial Commission's order denying Ross's on the grounds of untimeliness. *Id.* at *4. Thus, we held the Commission's decision was not so arbitrary that it could not have been the result of a reasoned decision; however, we also described:

> In any event, even if the motion were timely, we still could not hold that the Commission's decision to deny the motion amounted to an abuse of discretion. It is well-settled that the Commission is the sole judge of the credibility of the witnesses and the [evidentiary] weight to be given their testimony. The Commission heard the SBI agent's sworn testimony about the date when Ross's criminal history was

last updated. The Commission found that testimony to be credible. This Court, in turn, held that there was competent evidence to support the Commission's decision. In light of these determinations, we cannot say that the Commission abused its discretion by declining to reconsider that credibility determination on a Rule 60 motion.

*Id.* at *3 (alteration in original) (cleaned up).

Put simply, Ross attempts to re-style arguments he has already presented and were decided before this Court. This Court determined in *Ross I* and *Ross II* that there was competent and credible evidence that SBI made a notation to Ross's criminal record as of 19 August 2011, and the Industrial Commission did not abuse its discretion denying Ross's motion for reconsideration. *Ross I,* 2018 WL 2016405 at *4; *Ross II*, 2021 WL 3625362, at *4. This same evidence exists in this case. And here, this same evidence was considered by the Industrial Commission.

Further, in the instant case, the Commission weighed the contrary evidence presented by Ross, and made credibility determinations when it stated:

12. Plaintiff expends much effort in the instant claim arguing that, at best, Defendant NCSBI has shown only that its database was updated with the notation no earlier than April 9, 2015 (the date of the printout that Defendant NCSBI produced in response to Plaintiff's filing, on March 24, 2015, of his tort claim in I.C. No. TA-24836 relating to the alleged loss of his . . . job that had occurred in February 2014). Any claim for damages related to the alleged loss of the . . . job as against Defendant NCSBI, including but not limited to Plaintiff's contention that Defendant NCSBI obtained judgment in its favor in I.C. No. TA-24836 through fraud on the court is barred by the doctrine of res judicata, but the Full Commission has considered

Plaintiff's presentation as evidence on the question of when Defendant NCSBI in fact added the notation to its database.

13. Plaintiff relies heavily on the Declaration of Monica D. Hamner, which was made during Plaintiff's lawsuit in Maryland federal district court relating to the denial of Plaintiff's attempt to purchase a firearm in Maryland in 2011. According to the Hamner affidavit, a check of Defendant NCSBI's database on Plaintiff made by the FBI's National Instant Criminal Background Check System ('NICS') on February 15, 2011 in connection with that attempted firearm purchase revealed Plaintiff's 1969 murder conviction. The affidavit further stated that, at some point after February 15, 2011, upon further review, NICS contacted Defendant NCSBI and was provided with "disposition information" that had not been available to NICS during the initial check, to wit, that Plaintiff's 1969 murder conviction had been set aside, was null and void, and had no legal effect. The Hamner affidavit went on to state that this "disposition information" had not been available to NICS during the initial check because of an issue with "specified access permission." Overall, the Full Commission finds the Hamner affidavit to be unclear as to the question of whether, as of February 15, 2011, Defendant NCSBI's database included the notation about Plaintiff's 1969 murder conviction.

14. Plaintiff may have raised an issue of fact as to whether, in fact, Defendant NCSBI's database was not actually updated with the notation until after August 19, 2011 (the update date that Defendant NCSBI asserted during the trial of I.C. No. TA-24836), and the evidence of record in the instant tort claim is unclear as to whether it was or not. However, based upon the preponderance of the evidence in view of the entire record, the Full Commission finds that Plaintiff has failed to prove that the notation was not on Defendant NCSBI's database at any time after the entry of the June 1, 1983 federal court order requiring it. Plaintiff has pointed to background checks on Plaintiff that were conducted on various dates, including but not limited to the

> check conducted by the Maryland State Police regarding the Allied Barton job in 2014, that revealed Plaintiff's 1969 murder conviction, but it is not clear from the record that those checks did not also turn up the notation to the effect that the conviction had been set aside, was null and void, and had no legal effect. On this record, it is just as likely that the notation was there (and the other agencies ignored it or failed to give it appropriate consideration) as it is that the notation was not there. Further, on at least one occasion (the background check conducted for Plaintiff's application for a private security registration in the Commonwealth of Virginia in 2003, which application was approved), apparently whatever information was provided from Defendant NCSBI's database was not disqualifying for Plaintiff.

"On appeal, this Court does not have the right to weigh the evidence and decide the issue on the basis of its weight. The Court's duty goes no further than to determine whether the record contains any evidence tending to support the finding." *McGee v. N.C. Dep't of Revenue*, 135 N.C. App. 319, 324 (1999) (cleaned up). "The findings of the Industrial Commission are conclusive on appeal when supported by competent evidence even though there may be evidence to support a contrary finding," *Gilliam*, 112 N.C. App. at 536, and it is well-settled that the "Commission is the sole judge of the credibility of the witnesses and the evidentiary weight to be given their testimony, *Holt v. N.C. Dep't of Transp.*, 245 N.C. App. 167, 175 (2016) (cleaned up). Thus, where the Full Commission determined Ross's evidence was insufficient, Ross's argument fails.

## C. Negligence

### 1. SBI

Regardless of Ross's arguments against SBI related to duty, breach, and proximate cause, Ross failed to prove a required element of negligence: damages.

The Tort Claims Act states "[t]he North Carolina Industrial Commission is . . . a court for the purpose of hearing and passing upon tort claims against . . . all . . . departments, institutions and agencies of the State." N.C.G.S. § 143-291(a) (2023). Accordingly, the Industrial Commission is authorized to

> award damages in claims based on the negligence of "any officer, employee, involuntary servant or agent of the State while acting within the scope of his office, employment, service, agency or authority, under circumstances where the State of North Carolina, if a private person, would be liable to the claimant in accordance with the laws of North Carolina."

*Kawai Am. Corp. v. Univ. of N.C.*, 152 N.C. App. 163, 166 (2002) (citation omitted).

> To establish a prima facie case of actionable negligence, a plaintiff must allege facts showing: (1) the defendant owed the plaintiff a duty of reasonable care, (2) the defendant breached that duty, (3) the defendant's breach was an actual and proximate cause of the plaintiff's injury, and (4) the plaintiff suffered damages as the result of the defendant's breach.

*Gibson v. Ussery*, 196 N.C. App. 140, 143 (2009) (cleaned up). Therefore, "[t]o sustain the action, [t]he plaintiff must do more than show the possible liability of the defendant for the injury. He must go further and offer at least some evidence which reasonably tends to prove every fact essential to his success." *Id.* (second alteration in original) (cleaned up). In other words, a plaintiff bears the burden of demonstrating all elements of negligence. *Id*. at 146. Evidence must demonstrate

more than "mere conjecture and speculation." *Id.*

Ross does not challenge any findings of fact or conclusions of law related to the Industrial Commission's determination that he failed to demonstrate damages. *See Allred*, 227 N.C. App. at 232 ("Unchallenged findings of fact are presumed to be supported by competent evidence and are binding on appeal.").

In its order, the full commission found and concluded:

> 16. [Ross] alleges that, after he moved to Maryland in approximately 2000, got married, and then worked in several positions in and around Maryland and the D.C. area for approximately 16 years, he lost at least two solid career jobs and/or promotional opportunities [. . .] He also claims he lost his marriage during that period because of various background checks that were done on him in which Defendant's NCSBI's database (due to Defendant NCSBI's alleged negligence) reported his 1969 murder conviction. [Ross] further alleges that he continued to suffer the ill effects of Defendant NCSBI's alleged negligence in his jobs prospects after returning to North Carolina in 2016, and he alleges that, instead of the secure retirement that he should be enjoying, he has been left with loads of crushing debt.
>
> . . . .
>
> 21. Based upon the preponderance of the evidence in view of the entire record, the Full Commission finds that even if Plaintiff established that either Defendant NCSBI or Defendant NCDPS failed to keep an accurate, updated criminal history for him on their databases, Plaintiff's allegations of damages in the instant claim are so non-specific, speculative, and/or conclusory as to not provide adequate support for a finding that his alleged damages were actually or proximately caused by any breach of duty by Defendants.

On appeal, Ross argues he has suffered "collateral damages" and cites to his own testimony but does not challenge the Full Commission's determinations related to these damages. Accordingly, we affirm the Industrial Commission's conclusion that Ross failed to meet his burden to establish SBI was negligent. *See Gibson*, 196 N.C. App. at 143 (To allege negligence, a plaintiff must show facts of duty, breach, causation, and damages, and "[h]e must go further and offer at least some evidence which reasonably tends to prove every fact essential to his success." (cleaned up)).

## 2. DPS

Although Ross generally argues SBI and DPS were "negligent in the maintenance of Ross's criminal history records by continuing to report his unconstitutional conviction without qualification or annotation," he did not present any evidence before the Industrial Commission related to negligence by DPS. Ross's presentation of documents, testimony, and other evidence related to SBI and the FBI was insufficient to meet his burden of proving negligence by DPS. *See Gibson*, 196 N.C. App. at 143 ("To sustain the action, [t]he plaintiff must do more than show the possible liability of the defendant for the injury. He must go further and offer at least some evidence which reasonably tends to prove every fact essential to his success." (cleaned up)).

Thus, Ross failed to demonstrate any evidence of negligence as a result of an identified "officer, employee, involuntary servant or agent of" DPS. N.C.G.S. § 143-291(a) (providing that the Industrial Commission determines negligence claims

based on allegations against "an officer, employee, involuntary servant or agent of the State while acting within the scope of his office, employment, service, agency or authority[.]"). Accordingly, we affirm the Industrial Commission's conclusion that Ross failed to present a prima facie case of negligence against DPS.

## V. Conclusion

The Industrial Commission correctly concluded that Ross failed to demonstrate SBI was negligent where Ross failed to challenge its factual findings and conclusions of law related to damages. Further, the Industrial Commission properly determined that Ross failed to establish that DPS was negligent. Accordingly, we affirm the order of the Industrial Commission.


AFFIRMED.

Judges ZACHARY and GORE concur.

Report per Rule 30(e).